DILLINGHAM & MURPHY, LLP
CARLA J. HARTLEY (STATE BAR NO. 117213)
WILLIAM P. WILSON (STATE BAR NO. 230444)
225 Bush Street, 6th Floor
San Francisco, California 94104-4207
Telephone:    (415) 397-2700
Facsimile:    (415) 397-3300

Attorneys for defendant
DOMINION ENTERPRISES

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| RITA SIGLAIN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>TRADER PUBLISHING COMPANY, a Virginia General Partnership; DOMINION ENTERPRISES, INC., a Virginia corporation; LANDMARK COMMUNICATIONS, INC., a Virginia corporation; BEST IMAGE MARKETING, INC., a California corporation,<br><br>Defendants. | Case No. CV-08-2108 JL<br><br>DECLARATION OF WILLIAM P. WILSON IN SUPPORT OF MOTION TO STAY ACTION PENDING ARBITRATION<br><br>Date:         June 4, 2008<br>Time:         9:30 a.m.<br>Courtroom: F<br>Judge:        The Hon. Magistrate<br>             Judge James Larson |

I, WILLIAM P. WILSON, declare:

1.      I am an attorney duly licensed to practice law before the courts of California, including this court, and am an attorney in the law firm of Dillingham & Murphy, LLP, attorneys of record for defendant DOMINION ENTERPRISES, INC., a Virginia General Partnership (sued erroneously as Dominion Enterprises, Inc. a Virginia corporation).  If called upon to do so, I could and would competently testify to the matters of fact set forth within this declaration, as I have personal knowledge thereof.

2.      Attached hereto as Exhibit "A" and incorporated herein by reference is a true and correct copy correct copy of the Demand for Arbitration submitted to the American Arbitration Association on behalf of defendant Dominion Enterprises on April 23, 2008.

3.      Attached hereto as Exhibit "B" and incorporated herein by reference is a true and

1    correct copy of Rule 4 of the American Arbitration Association's National Rules for the

2    Resolution of Employment Disputes downloaded from the Association's website.

3        I declare under penalty of perjury under the laws of the State of California that the

4    foregoing is true and correct.  Executed on April 23, 2008, at San Francisco, California.

6                                    WILLIAM P. WILSON

DECLARATION OF WILLIAM P. WILSON ISO MOTION TO STAY ACTION PENDING ARBITRATION

Exhibit A

# AMERICAN ARBITRATION ASSOCIATION
## EMPLOYMENT ARBITRATION RULES
### DEMAND FOR ARBITRATION
#### (FOR USE ONLY IN CALIFORNIA)

**RECEIVED** APR 23 AAA-SF

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. Only those disputes arising out of employer promulgated plans are included in the consumer definition. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA's Western Case Management Center at 1-877-528-0879, if you have any questions regarding the waiver of administrative fees.

*MEDIATION is a nonbinding process. The mediator assists the parties in working out a solution that is acceptable to them. If you would like the AAA to contact the other parties to determine whether they wish to mediate this matter, please check this box.* □
*There is no additional administrative fee for this service.*

| TO: Name<br>Rita Siglain | Name of Representative (if known)<br>Eric G. Young | Name of Firm (if applicable)<br>Law Offices of Eric G. Young |
|---|---|---|
| Address<br>c/o Law Offices of Eric G. Youngh, 141 Stony Cr., Ste. 202 | Representative's Address<br>141 Stony Circle, Suite 202 | |

| City<br>Santa Rosa | State<br>CA | Zip Code<br>95401 | City<br>Santa Rosa | State<br>CA | Zip Code<br>95401 |
|---|---|---|---|---|---|
| Phone No.<br>707-575-5005 | Fax No.<br>707-575-5395 | | Phone No.<br>707-575-5005 | Fax No.<br>707-575-5395 | |
| E-Mail Address | | | E-Mail Address<br>ericyoung@gmail.com | | |

The named claimant, a party to an arbitration agreement or program which provides for arbitration under the Employment Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

**THE NATURE OF THE DISPUTE**
Ms. Siglain claims age and disability discrimination, failure to accommodate, wrongful termination.

**THE CLAIM OR RELIEF SOUGHT** (the amount, if any)
Monetary damages.

**DOES THIS DISPUTE ARISE OUT OF AN EMPLOYMENT RELATIONSHIP?**    Yes ☑    No ☐
**DATE OF THE EMPLOYMENT AGREEMENT** _____

**WHAT WAS/IS THE EMPLOYEE'S ANNUAL WAGE RANGE?** Note: this question is required by California law.

☑ Less than $100,000       ☐ $100,000 - $250,000       ☐ Over $250,000

Claimant        ☐ Employee    ☐ Employer
Respondent      ☑ Employee    ☐ Employer

**HEARING LOCALE REQUESTED**

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association at its Fresno, CA _____ office, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within ten days after notice from the AAA.

| Signature (may be signed by a representative)<br>*Carla J. Hartley* | Title<br>Attorney at Law | Date<br>April 23, 2008 |
|---|---|---|
| Name of Claimant<br>Dominion Enterprises, a VA General Partnership | Name of Representative<br>Carla J. Hartley | Name of Firm (if applicable)<br>Dillingham & Murphy, LLP |
| Address (to be used in connection with this case) | Representative's Address<br>225 Bush Street, Sixth Floor | |

| City | State | Zip Code | City<br>San Francisco | State<br>CA | Zip Code<br>94104 |
|---|---|---|---|---|---|
| Phone No. | | Fax No. | Phone No.<br>415-397-2700 | Fax No.<br>415-397-3300 | |
| E-Mail Address | | | E-Mail Address<br>cjh@dillinghammurphy.com | | |

TO BEGIN PROCEEDINGS, PLEASE SEND TWO COPIES OF THIS DEMAND **AND THE ARBITRATION AGREEMENT,** WITH THE FILING FEE AS PROVIDED FOR IN THE RULES, TO THE AAA. SEND THE ORIGINAL DEMAND TO THE RESPONDENT.

Form E2-01/03

Attachment 1

COPY

1   ERIC G. YOUNG, ESQ. (SBN - 190104)
    LAW OFFICES OF ERIC G. YOUNG
2   141 Stony Circle, Suite 202
    Santa Rosa, California 95401
3   Telephone: 707.575.5005
    Facsimile: 707.575.5395
4
    Attorney for Plaintiff,
5   RITA SIGLAIN

6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    IN AND FOR THE COUNTY OF LAKE

10

11  RITA SIGLAIN, an                    )   Case No. CV405233
    individual,                         )
12                                      )   COMPLAINT FOR DAMAGES AND
          Plaintiff,                    )   DECLARATORY RELIEF
13                                      )
                                        )   1.   Age Discrimination - Violation of
14                                      )        Age Discrimination in
                                        )        Employment
15  v.                                  )        Act
                                        )   2.   Age Discrimination - Violation of
16  TRADER PUBLISHING COMPANY,          )        Govt. Code Sec. 12940(a)
    a Virginia General Partnership;     )   3.   Disability Discrimination -
17  DOMINION ENTERPRISES, INC., a       )        Violation of Govt. Code Sec.
    Virginia corporation; LANDMARK      )        12940(a)
18  COMMUNICATIONS, INC., a Virginia    )   4.   Failure to Accommodate -
    corporation; BEST IMAGE MARKETING,  )        Violation of Govt. Code Sec.
19  Inc., a California corporation.     )        12940(m) -
                                        )        1102.5, et seq.
20        Defendants.                   )   5.   Wrongful Termination in
                                        )        Violation of Public Policy
21                                      )   6.   Intentional Infliction of Emotional
                                        )        Distress
22                                      )   7.   Negligence - Breach of Statutory
                                        )        Duty
23                                      )   8.   Request for Declaratory Relief
                                        )
24                                      )   UNLIMITED CIVIL - JURY TRIAL
                                        )   DEMANDED
25  _____)

26        Plaintiff RITA SIGLAIN, an individual, alleges:

27  ///

28  ///

## JURISDICTION AND VENUE ALLEGATIONS

1.    At all times mentioned herein, Plaintiff RITA SIGLAIN (hereinafter referred to as "MS. SIGLAIN") was an adult female and a resident of Lake County, State of California, and was employed by Defendants, and each of them.

2.    At all times mentioned herein, Defendants, were regularly doing business and operating in Lake County, State of California, operating a publishing business. Defendant TRADER PUBLISHING COMPANY is a General Partnership organized under the laws of the Commonwealth of Virginia. Defendants DOMINION ENTERPRISES, INC. and LANDMARK COMMUNICATIONS, INC. are Corporations organized under the laws of the Commonwealth of Virginia. BEST IMAGE MARKETING, INC. is a Corporation with its principal place of business located in the City of Clearlake, County of Lake, State of California.

3.    Plaintiff is unaware of the true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named DOES 1 through 25, inclusive, and Plaintiff sues these Defendants by fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiff prays leave of court to amend this Complaint to show the true names and/or capacities of these Defendants when they have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of these fictitiously-named Defendants is in some manner, responsible in law or in fact for the damages prayed for herein, directly or vicariously.

4.    Plaintiff is informed and believes, and based thereon alleges, that in committing the acts, omissions, and/or errors complained of herein, the Defendants, and each of them, were acting in concert with, conspired with, and/or was the agent, employee, successor, predecessor, representative, parent or subsidiary, and/or alter ego of every other Defendant, and was acting at least in part in the course and scope of such relationship or agency at all times mentioned herein.

5.    The acts, occurrences, events and incidents giving rise to this Complaint, and each cause of action stated herein, took place in Lake County, State of California.

6.    In addition to the common law causes of action stated herein, this action is brought pursuant to the following statutory provisions:

///

Complaint for Damages and Decl. Relief          - 2 -

# GENERAL FACTUAL ALLEGATIONS

11.    MS. SIGLAIN is 59 years old. Her date of birth is 2/8/1948.

12.    On or about May 17, 2005, MS. SIGLAIN began working for Defendants when Defendants acquired her former employer's company, BEST IMAGE MARKETING, INC., a publishing-based business located in Clearlake, California. MS. SIGLAIN had worked for BEST IMAGE MARKETING, INC. since approximately January 2001.

13.    When she was retained as an employee by Defendants, MS. SIGLAIN's job title was Senior Editor/Manager of the Research and Writing Department. In this capacity, MS. SIGLAIN performed a number of job duties related to Defendants' publishing business, including but not limited to writing, editing, management of other employees involved in Defendants' businesses, customer service, client contact, approve sales invoices and related documents, and similar job duties.

14.    Prior to being retained as an employee by Defendants, MS. SIGLAIN developed a degenerative pinched nerve condition in her spine. This condition creates persistent pain in MS. SIGLAIN'S neck, spine, arms, and legs and makes it difficult and painful for MS. SIGLAIN to work at a computer with her head bent downwards or to sit with her legs down for an extended period of time. This condition creates a situation where MS. SIGLAIN must sit with her legs up while at work and to work on a computer that is raised to the point where her head is not bent down in any way. MS. SIGLAIN must also take frequent breaks to avoid sitting in any position for extended periods of time, affecting her ability to sit at a desk for long periods of times, her ability to travel long distances in a car, and similar normal, daily activities.

15.    On or about February 3, 2005, MS. SIGLAIN provided a doctor's note to her employer at the time, advising her employer that she was experiencing significant job-related stress and weight loss. This note further indicated that MS. SIGLAIN's job duties may need to be modified to reduce pressure on MS. SIGLAIN.

16.    Following further evaluation by her physician, MS. SIGLAIN was diagnosed with the degenerative pinched nerve in her spine. On or about February 20, 2005, MS. SIGLAIN'S doctor wrote to MS. SIGLAIN's supervisor, Terry Fowler, advising Mr. Fowler of MS.

Complaint for Damages and Decl. Relief          - 4 -

1  SIGLAIN's medical condition. This note further requested that MS. SIGLAIN be allowed to

2  work 4 hours per day at home, where she could elevate her legs and work using a laptop

3  computer, and 4 hours in the office.

4        14.    Upon receipt of this letter from MS. SIGLAIN's doctor, Mr. Fowler denied MS.

5  SIGLAIN's request for an accommodation allowing her to work from home, even though other

6  employees of Defendants were allowed to work from home.

7        15.    On or about February 26, 2007, MS. SIGLAIN sent an email to Mr. Fowler

8  requesting that she be allowed to bring a couch from her own home into her office at work, and

9  that she be allowed to use her laptop instead of a desktop computer, so that she could work a full

10  8-hour day in the workplace, but still work with her feet elevated as recommended by her doctor.

11       16.    Upon receipt of this email, Mr. Fowler, again, denied MS. SIGLAIN'S request for

12  an accommodation of her workplace and/or job duties. MS. SIGLAIN'S employer did not permit

13  conversation about the issue of accommodations, or make any further suggestions for

14  accommodating MS. SIGLAIN'S disability. The only suggestion made to MS. SIGLAIN by Mr.

15  Fowler and/or a Ms. Peggy Kimieck (HR @ BEST IMAGE MARKETING, INC.) was that MS.

16  SIGLAIN either go on medical leave or to continue to work in her office without

17  accommodation.

18       17.    After being told this, MS. SIGLAIN continued to work as best she could, electing

19  to work while sitting on the floor on a cushion with her legs up. This temporarily alleviated MS.

20  SIGLAIN's pain while at work, but eventually, her pain returned and worsened due to the

21  cramped position she was sitting in on the floor. When she advised her employer of this

22  situation, MS. SIGLAIN received no further accommodations from her employer, a request to be

23  re-assigned to another position for which she had already been trained by her employer was

24  rejected, and no further interactive process occurred on the part of MS. SIGLAIN'S employer.

25       18.    As indicated, these events took place over a period of several months. During this

26  time, MS. SIGLAIN'S working environment became increasingly hostile. For example, but not

27  by way of limitation, MS. SIGLAIN's supervisor, Mr. Fowler, began giving her lengthy,

28  complex, and time-consuming daily progress charts to fill out, which were never reviewed or

Complaint for Damages and Decl. Relief          - 5 -

1  commented upon by Mr. Fowler. MS. SIGLAIN was expected to fill out these charts in addition
2  to her customary job duties, which was very difficult for her to do while coping with daily pain in
3  the workplace and the difficulties presented by her disabling condition.

4          19.    In 2006, MS. SIGLAIN's supervisor changed the title of her position, eliminating
5  her title as Senior Editor, and re-naming her "Research and Writing Specialist." This change in
6  title negatively affected MS. SIGLAIN's ability to perform some of her job duties, and created a
7  further hostile and demoralizing work environment for MS. SIGLAIN.

8          20.    In addition, in January 2007, MS. SIGLAIN's staff was reduced, further
9  exacerbating the pressure under which she was already working because she was now expected
10 to perform job tasks that had been previously performed by other employees.

11          21.    In addition, on one occasion, MS. SIGLAIN requested that she be allowed to take
12 2 accrued vacation days to visit her father who had suffered a stroke several months before.
13 Despite having the accrued time, MS. SIGLAIN'S request was denied, and she was told that she
14 could not take the days off until all of her job duties were completed. This created an
15 unreasonable and hostile barrier for MS. SIGLAIN in light of the fact that Defendants had
16 terminated the staff members who previously assisted her in completing job tasks, and had given
17 MS. SIGLAIN additional "busy-work"-type job duties to complete in addition to her regular job
18 duties.

19          22.    At all pertinent times, incidents such as the foregoing created a hostile, oppressive
20 and offensive working environment for MS. SIGLAIN.

21          23.    On or about March 22, 2007, having not received any further accommodations
22 from Defendants, MS. SIGLAIN finally requested medical leave. MS. SIGLAIN was on medical
23 leave from March 22, 2007 until April 21, 2007.

24          24.    On or around April 21, 2007, MS. SIGLAIN'S doctor extended her medical leave
25 until June 11, 2007. Ultimately, MS. SIGLAIN'S doctor extended her medical leave until
26 December 7, 2007.

27          25.    On or about June 26, 2007, without warning, Defendants terminated MS.
28 SIGLAIN'S employment while she was still on medical leave.

Complaint for Damages and Decl. Relief              - 6 -

## FIRST CAUSE OF ACTION

## AGE DISCRIMINATION - VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT (29 U.S.C. §§ 621, *et seq.*)

### Against All Defendants

21.    MS. SIGLAIN re-alleges and incorporates herein the allegations in paragraph 1 through 20 as if set forth in full in this First Cause of Action.

22.    At all times mentioned herein, MS. SIGLAIN performed her job with Defendants satisfactorily.

23.    Despite knowing of MS. SIGLAIN'S physical limitations, as more fully described herein, Defendants altered the terms or conditions of MS. SIGLAIN'S employment by refusing to reasonably accommodate her disability, advising MS. SIGLAIN to take medical leave rather than engaging in the interactive good faith process of accommodating her disability, and in ultimately terminating her employment while she was on medical leave and while she continued to suffer from a physical condition that created the disability that was known to Defendants.

24.    One of the accommodations requested by MS. SIGLAIN was to be able to work from home at least part-time. This accommodation was rejected by Defendants, even though younger employees with less seniority than MS. SIGLAIN were allowed to work from home.

25.    In addition, Defendants created a hostile and offensive working environment for MS. SIGLAIN as more fully described herein which MS. SIGLAIN is informed and believes, and based thereon alleges, was designed to force MS. SIGLAIN to take medical leave and/or quit her employment because she was one of the older, higher paid workers, with the most seniority in Defendants' company. MS. SIGLAIN is further informed and believes, and based thereon alleges, that this scheme by Defendants was designed, in part, to replace her with a younger, lower paid worker(s).

26.    By altering MS. SIGLAIN'S employment in this manner, Defendants took an adverse employment action against MS. SIGLAIN, which in fact caused serious financial and emotional harm, injury, and damage to MS. SIGLAIN, as more fully described herein.

///

27.    Defendants altered the terms and conditions of MS. SIGLAIN's employment due to an animus based on age, thereby discriminating against MS. SIGLAIN in violation of the ADEA.

28.    In addition, MS. SIGLAIN is informed and believes, and based thereon alleges, that other, similarly-situated older workers were also terminated or suffered other adverse employment actions by Defendants.  MS. SIGLAIN is further informed and believes, and based thereon alleges, that, after she was terminated, Defendants re-allocated her job duties to younger workers.

29.    These actions by Defendants further evidences an ongoing pattern of discrimination against MS. SIGLAIN and a pattern of disparate treatment of its older workers in violation of the ADEA.

30.    The actions complained of herein did not have a legitimate, non-discriminatory motive behind them, and any reasons offered by Defendants to the contrary are pretextual and a sham.

31.    Defendants also did not have a bona fide occupational qualification for terminating MS. SIGLAIN's employment.  MS. SIGLAIN had been performing her job duties satisfactorily.  And, but for the fact that Defendants also discriminated against MS. SIGLAIN based on her age and/or disability and/or failed to accommodate MS. SIGLAIN's known disability, MS. SIGLAIN would have been able to perform her essential job functions.

32.    As a direct and proximate result of the actions of Defendants, MS. SIGLAIN has sustained loss of income, earning capacity, losses in job opportunities and advancements, and job-related benefits of every kind and type, all in an amount and kind according to proof at trial.

33.    As a further direct and proximate result of the actions of Defendants, MS. SIGLAIN has sustained severe injury to her psyche and emotional well-being, embarrassment, humiliation and anguish, all in an amount and kind according to proof at trial.

WHEREFORE, MS. SIGLAIN prays Judgment against Defendants, and each of them, as set forth below.

///

Complaint for Damages and Decl. Relief          - 8 -

1

## SECOND CAUSE OF ACTION

2

### AGE DISCRIMINATION - VIOLATION OF GOVT. CODE § 12940(a)

3

#### Against All Defendants

4       34.    MS. SIGLAIN re-alleges and incorporates the allegations of paragraphs 1 through

5  33 as if set forth in full in this Second Cause of Action.

6       35.    At all times, MS. SIGLAIN was qualified for the position she held with

7  Defendants, and up until the adverse employment actions complained of herein, had been

8  performing those duties without incident, complaint or disciplinary action.

9       36.    As set forth herein, MS. SIGLAIN suffered an adverse employment action which

10  was motivated, at least in part, due to MS. SIGLAIN's age in violation of Government Code

11  section 12940(a).

12       37.    In addition, after terminating her employment, MS. SIGLAIN is informed and

13  believes, and based thereon alleges, that Defendants re-allocated her job duties to younger

14  workers (some of whom had been granted accommodations or alterations to their job duties or

15  employment environment that were the same or similar to ones requested by MS. SIGLAIN).

16       38.    The actions complained of herein were a substantial factor in causing harm to MS.

17  SIGLAIN as set forth herein.

18       39.    The conduct of the Defendants, and each of them, was done willfully,

19  intentionally, and with an evil motive amounting to malice, and the Defendants' actions were

20  done in conscious disregard for the rights of MS. SIGLAIN.  Thus, MS. SIGLAIN is entitled to

21  an award of exemplary or punitive damages to deter similar conduct by other employers in the

22  future.

23       WHEREFORE, MS. SIGLAIN prays Judgment against Defendants, and each of them, as

24  set forth below.

25  ///

26  ///

27  ///

28

Complaint for Damages and Decl. Relief              - 9 -

## THIRD CAUSE OF ACTION

## DISABILITY DISCRIMINATION - VIOLATION OF GOVT. CODE § 12940(a)

### Against All Defendants

40.    MS. SIGLAIN re-alleges and incorporates the allegations of paragraphs 1 through 37 as if set forth in full in this Third Cause of Action.

41.    At all pertinent times mentioned herein, Defendants knew or should have known that MS. SIGLAIN was an employee with a disability and that MS. SIGLAIN's disability limited a major life activity; namely, her ability to work at a desk with her head bent down the way that a non-disabled person typically works, her ability to sit in a standard seated position with her legs down and feet flat on the floor, and her ability to sit at a desk for long periods of time. As set forth herein, MS. SIGLAIN and her physician repeatedly advised Defendants of her disability as well as her diagnosis. MS. SIGLAIN requested a number of accommodations from Defendants to address her disability, and MS. SIGLAIN was informed by Defendants that she should take medical leave to deal with her disability. All of these facts evidence that Defendants knew, at all pertinent times, that MS. SIGLAIN was an employee with a disability as defined under California law.

42.    Despite her physical limitations, MS. SIGLAIN was able to perform the essential functions of her position with reasonable accommodations, which Defendants knew and refused at all times to provide to MS. SIGLAIN.

43.    Rather than providing the reasonable accommodations requested by MS. SIGLAIN, Defendants, and each of them created additional "busy work"-type job duties for MS. SIGLAIN, reduced and/or eliminated her support staff, altered MS. SIGLAIN's job title, and generally created a hostile working environment for MS. SIGLAIN, all of which MS. SIGLAIN believes was designed to create a hostile work environment, to force her to take medical leave and, ultimately, to terminate her employment.

44.    MS. SIGLAIN's disability was, at least, a motivating factor in the reason why Defendants took the adverse employment actions complained of herein.

///

45.    Defendants' conduct as alleged herein constitutes an unlawful employment practice within the meaning of Government Code section 12940, *et seq.* and relevant regulations and case law interpreting said provisions.

46.    As a direct and proximate result of the actions of Defendants, and each of them, MS. SIGLAIN has suffered and continues to suffer embarrassment, humiliation, mental anguish, and emotional and physical distress, all to her damage in excess of the minimum subject matter jurisdiction of this court and according to proof.

47.    In addition, as a direct and proximate result of the actions of Defendants, and each of them, MS. SIGLAIN continues to suffer losses in earnings, bonuses, deferred compensation, employment benefits of every kind and type, earning capacity, opportunities for employment advancement, and/or work experience, all to her detriment in an amount in excess of the minimum subject matter jurisdiction of this court and according to proof.

48.    The acts of Defendants, and each of them, as alleged above, were also done maliciously, oppressively, and with the wrongful and unlawful intent of harming and injuring MS. SIGLAIN.  Specifically, but not by way of limitation, Defendants created a hostile and oppressive work environment as part of a pattern of conduct designed to force MS. SIGLAIN to take medical leave rather than provide reasonable accommodations for MS. SIGLAIN's disability as required by California law.  After MS. SIGLAIN acquiesced in Defendants' scheme, Defendants terminated MS. SIGLAIN's employment while she was on medical leave.  These actions by Defendants were done fraudulently and in conscious disregard for the rights of MS. SIGLAIN as a California employee.  Therefore, MS. SIGLAIN is entitled to recover punitive damages against Defendants, and each of them, to make an example of these Defendants and to deter similar misconduct by other employers in the future.

WHEREFORE, MS. SIGLAIN prays Judgment against Defendants, and each of them, as set forth below.

///

///

///

Complaint for Damages and Decl. Relief            - 11 -

## FOURTH CAUSE OF ACTION

### FAILURE TO ACCOMMODATE - VIOLATION OF GOVT. CODE § 12940(m)

#### Against All Defendants

49.    MS. SIGLAIN re-alleges and incorporates the allegations of paragraphs 1 through 48 as if set forth in full in this Fourth Cause of Action.

50.    At all times mentioned herein, Defendants and its agents failed to engage in an interactive, good faith process of accommodating MS. SIGLAIN's known disability.  Despite being placed on notice of MS. SIGLAIN's disability, and the need for reasonable accommodations of her job duties and working conditions, Defendants and its agents failed and refused to provide such accommodations to MS. SIGLAIN.  In so doing, Defendants violated the California Fair Employment Housing Act, as amended by the Prudence Kay Poppins Act.

51.    As a direct and proximate result of the actions of Defendants, and each of them, MS. SIGLAIN has suffered and continues to suffer embarrassment, humiliation, mental anguish, and emotional and physical distress, all to her damage in excess of the minimum subject matter jurisdiction of this court and according to proof.

52.    In addition, as a direct and proximate result of the actions of Defendants, and each of them, MS. SIGLAIN continues to suffer losses in earnings, bonuses, deferred compensation, employment benefits, earning capacity, opportunities for employment advancement, and/or work experience, all to her detriment in an amount in excess of the minimum subject matter jurisdiction of this court and according to proof.

53.    The acts of Defendants, and each of them, as alleged above, were also done maliciously, oppressively, and with the wrongful and unlawful intent of harming and injuring MS. SIGLAIN.  Specifically, but not by way of limitation, Defendants created a hostile and oppressive work environment as part of a pattern of conduct designed to force MS. SIGLAIN to take medical leave rather than provide reasonable accommodations for MS. SIGLAIN's disability as required by California law.  After MS. SIGLAIN acquiesced in Defendants' scheme, Defendants terminated MS. SIGLAIN's employment while she was on medical leave.  These

Complaint for Damages and Decl. Relief          - 12 -

1    actions by Defendants were done fraudulently and in conscious disregard for the rights of MS.

2    SIGLAIN as a California employee. Therefore, MS. SIGLAIN is entitled to recover punitive

3    damages against Defendants, and each of them, to make an example of these Defendants and to

4    deter similar misconduct by other employers in the future.

5       WHEREFORE, MS. SIGLAIN prays Judgment against Defendants, and each of them, as

6    set forth below.

7                  **FIFTH CAUSE OF ACTION**

8       **WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

9                    **Against All Defendants**

10       54.     MS. SIGLAIN re-alleges and incorporates the allegations of paragraphs 1

11    through 53 as if set forth in full in this Fifth Cause of Action.

12       55.     At all pertinent times pleaded herein, MS. SIGLAIN was an employee subject

13    to the protections of each and every statutory, regulatory, and/or constitutional provision referred

14    to herein.

15       56.     In taking the actions against MS. SIGLAIN as described herein, Defendants,

16    and each of them, wrongfully terminated MS. SIGLAIN's employment in violation of the

17    fundamental public policies expressed in each and every statutory, regulatory and/or

18    constitutional provision referred to herein.

19       57.     As a direct and proximate result of the actions of Defendants, and each of them,

20    MS. SIGLAIN has suffered and continues to suffer embarrassment, humiliation, mental anguish,

21    and emotional and physical distress, all to her damage in excess of the minimum subject matter

22    jurisdiction of this court and according to proof.

23       58.     In addition, as a direct and proximate result of the actions of Defendants, and each

24    of them, MS. SIGLAIN continues to suffer losses in earnings, bonuses, deferred compensation,

25    employment benefits, earning capacity, opportunities for employment advancement, and/or work

26    experience, all to her detriment in an amount in excess of the minimum subject matter

27    jurisdiction of this court and according to proof.

28    ///

Complaint for Damages and Decl. Relief      - 13 -

1    59.    The acts of Defendants, and each of them, as alleged above, were also done

2    maliciously, oppressively, and with the wrongful and unlawful intent of harming and injuring

3    MS. SIGLAIN.  Specifically, but not by way of limitation, Defendants terminated ms.

4    SIGLAIN's employment after failing and refusing to provide reasonable job accommodations,

5    creating a hostile and offensive working environment after MS. SIGLAIN requested reasonable

6    job accommodations, falsely inducing MS. SIGLAIN to take medical leave, and then terminating

7    MS. SIGLAIN after she had acquiesced in Defendants' unlawful scheme.  These actions by

8    Defendants were done fraudulently and in conscious disregard for the rights of MS. SIGLAIN as

9    a California employee.  Therefore, MS. SIGLAIN is entitled to recover punitive damages against

10   Defendants, and each of them, to make an example of these Defendants and to deter similar

11   misconduct by other employers in the future.

12       WHEREFORE, MS. SIGLAIN prays Judgment against Defendants, and each of them, as

13   set forth below.

14                          **SIXTH CAUSE OF ACTION**

15             **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

16                            **Against All Defendants**

17   60.    MS. SIGLAIN re-alleges and incorporates the allegations of paragraphs 1

18   through 60 as if set forth in full in this Sixth Cause of Action.

19   61.    At all times mentioned herein, the conduct of the Defendants, and each of them,

20   was outrageous in that Defendants, through its agents, including but not limited to Terry Fowler,

21   intentionally, willfully and with conscious disregard to the rights of MS. SIGLAIN, discriminated

22   and retaliated against MS. SIGLAIN because she exercised her legal right to request reasonable

23   accommodations in the workplace.  The right of an employee to make such a request, without

24   fear of reprisal or adverse treatment of any kind by an employer, is well-recognized under

25   California law, and is encouraged as a means of not only protecting disabled employees but also

26   as a means of protecting the welfare of the public in general.

27   ///

28   ///

Complaint for Damages and Decl. Relief          - 14 -

1    62.    As a direct and proximate result of the actions of Defendants, and each of them,

2    MS. SIGLAIN did, in fact, sustain severe emotional distress, humiliation, embarrassment, and

3    anguish, in an amount and kind according to proof at trial.

4    WHEREFORE, MS. SIGLAIN prays Judgment against Defendants, and each of them, as

5    set forth below.

6                    **SEVENTH CAUSE OF ACTION**

7            **NEGLIGENCE - BREACH OF A STATUTORY DUTY**

8                        **Against All Defendants**

9    63.    MS. SIGLAIN re-alleges and incorporates the allegations of paragraphs 1 through

10    62 as if set forth in full in this Seventh Cause of Action.

11    64.    At all times mentioned herein, the conduct of Defendants, and each of them,

12    breached each and every statutory, regulatory and/or constitutional provision referred to herein,

13    which Defendants had a fundamental duty to obey for the welfare of MS. SIGLAIN and for the

14    welfare of the public generally.

15    65.    At all times mentioned herein, the conduct of Defendants, and each of them, in

16    violating the aforementioned statutory, regulatory, and/or constitutional provisions was a

17    substantial factor in bringing about the harm suffered by MS. SIGLAIN, as more fully pleaded

18    herein.

19    66.    At no time mentioned herein, did the Defendants, and each of them, have a valid

20    or lawful excuse or justification for violating the aforementioned statutory, regulatory, and/or

21    constitutional provisions.

22    WHEREFORE, MS. SIGLAIN prays Judgment against Defendants, and each of them, as

23    set forth below.

24                    **EIGHTH CAUSE OF ACTION**

25            **REQUEST FOR DECLARATORY RELIEF**

26                        **Against All Defendants**

27    67.    MS. SIGLAIN re-alleges and incorporates the allegations of paragraphs 1 through

28    66 as if set forth in full in this Eighth Cause of Action.

Complaint for Damages and Decl. Relief            - 15 -

68.  On or about May 17, 2005, MS. SIGLAIN executed a document entitled "Mutual Agreement to Arbitrate" with Defendant TRADER PUBLISHING COMPANY.  At the same time, MS. SIGLAIN executed a document entitled "Agreement With Restrictive Covenants" with Defendant TRADER PUBLISHING COMPANY.  True and correct copies of these documents are attached hereto as Exhibit "B."

69.  An actual controversy exists between MS. SIGLAIN and Defendants, including Defendant TRADER PUBLISHING COMPANY, relating to the legal rights and duties of the respective parties arising out of the employment relationship that existed between MS. SIGLAIN and Defendants.

70.  MS. SIGLAIN contends that:

    A.  Defendants do not have the right to compel arbitration under the terms of the documents attached hereto as Exhibit "B" on the grounds that the terms of these documents are vague, ambiguous, procedurally and substantively unconscionable, lack consideration, and lack true mutuality.

    B.  She should have the right to pursue her judicial remedies in a court of law rather than be bound to pursue her remedies solely through arbitration.

71.  MS. SIGLAIN is informed and believes that the Defendants will seek to compel arbitration under the terms of the documents attached hereto as Exhibit "B."  As such, an actual controversy exists between MS. SIGLAIN and Defendants, including Defendant TRADER PUBLISHING COMPANY, relating to the legal rights and duties of the respective parties arising out of the employment relationship that existed between MS. SIGLAIN and Defendants as well as the rights and duties of the respective parties arising out of the documents attached hereto as Exhibit "B."

72.  MS. SIGLAIN seeks a judicial declaration and determination that the agreement to arbitrate as reflected in the documents attached hereto as Exhibit "B" be adjudged void, unenforceable, and of no legal effect.

WHEREFORE, MS. SIGLAIN prays Judgment against Defendants, and each of them, as set forth below.

Complaint for Damages and Decl. Relief        - 16 -

## On the First Cause of Action

1.    For back pay and front pay in the maximum amount allowed by law, according to proof;

2.    For liquidated damages in the maximum amount allowed by law, according to proof;

3.    For attorneys' fees and court costs;

4.    For interest on all such sums; and

5.    For such other and further relief as the Court deems appropriate.

## On the Second Cause of Action

1.    For all compensatory damages owing to Plaintiff, according to proof;

2.    For all special damages owing to Plaintiff, according to proof;

3.    For punitive damages, according to proof;

4.    For attorneys' fees and court costs;

5.    For interest on all such sums; and

6.    For such other and further relief as the Court deems appropriate.

## On the Third Cause of Action

1.    For all compensatory damages owing to Plaintiff, according to proof;

2.    For all special damages owing to Plaintiff, according to proof;

3.    For punitive damages, according to proof;

4.    For attorneys' fees and court costs;

5.    For interest on all such sums; and

6.    For such other and further relief as the Court deems appropriate.

## On the Fourth Cause of Action

1.    For all compensatory damages owing to Plaintiff, according to proof;

2.    For all special damages owing to Plaintiff, according to proof;

3.    For punitive damages, according to proof;

4.    For attorneys' fees and court costs;

5.    For interest on all such sums; and

Complaint for Damages and Decl. Relief          - 17 -

6.      For such other and further relief as the Court deems appropriate.

### On the Fifth Cause of Action

1.      For all compensatory damages owing to Plaintiff, according to proof;

2.      For all special damages owing to Plaintiff, according to proof;

3.      For punitive damages, according to proof;

4.      For interest on all such sums; and

5.      For such other and further relief as the Court deems appropriate.

### On the Sixth Cause of Action

1.      For all compensatory damages owing to Plaintiff, according to proof;

2.      For all special damages owing to Plaintiff, according to proof;

3.      For punitive damages, according to proof;

4.      For interest on all such sums; and

5.      For such other and further relief as the Court deems appropriate.

### On the Seventh Cause of Action

1.      For all compensatory damages owing to Plaintiff, according to proof;

2.      For all special damages owing to Plaintiff, according to proof;

3.      For interest on all such sums; and

4.      For such other and further relief as the Court deems appropriate.

### On the Eighth Cause of Action

1.      For a judicial declaration and determination that the agreement to arbitrate as reflected in the documents attached hereto as Exhibit "B" be adjudged void, unenforceable, and of no legal effect.

2.      For such other and further relief as the Court deems appropriate.

Dated: February 4, 2008

                                    LAW OFFICES OF ERIC G. YOUNG

                                    By:
                                        Eric G. Young, Attorney for Plaintiff
                                        RITA SIGLAIN

Complaint for Damages and Decl. Relief          - 18 -

**EXHIBIT "A"**

STATE OF CALIFORNIA - State and Consumer Services Agency

ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2000 O Street, Suite 120, Sacramento, CA 95814-5212
(916) 445-5523 Fax (916) 323-6092
www.dfeh.ca.gov



December 6, 2007

Eric G. Young
Attorney at Law
Law Offices of Eric G. Young
141 Stony Circle, Ste 202
Santa Rosa, CA 95401

RE:    E200708E0387-01-pc
       SIGLAIN/DOMINION ENTERPRISES

Dear Eric Young:

## NOTICE OF FILING OF AMENDED CLOSED DISCRIMINATION COMPLAINT

Enclosed is a copy of your client's amended closed complaint that has been filed with the Department of Fair Employment and Housing in accordance with California Government Code sections 12960 and/or 12980. Also enclosed is a copy of your client's Notice of Case Closure, which constitutes your client's right-to-sue notice.

Please note that under Government Code section 12962, you are responsible for **service of the amended complaint** on respondent(s). You should also enclose a copy of the Notice of Case Closure along with the amended complaint. These documents must be served within **60 days** of the filing date of the amended complaint. Government Code section 12962, subdivision (b), further provides that complaints must be served either personally or by certified mail with return receipt requested.

For additional information, please read the enclosed Notice of Case Closure that explains the conditions for filing a private lawsuit in the State of California.

Sincerely,

Judith A. Miller
Consultant
Telephone Number: 916-445-5523

Enclosures

S:JM:cm

DFEH-200-50a (01/05)

**AMENDED**

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

# * * * EMPLOYMENT * * *

DFEH # = E 00708-E 0387-01-pc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)
MS. RITA SIGLAIN    TELEPHONE NUMBER (INCLUDE AREA CODE)

ADDRESS
c/o ERIC G. YOUNG, ATTORNEY, 141 Stony Circle, Ste. 202

CITY/STATE/ZIP
Santa Rosa, CA 95401    COUNTY Lake    COUNTY CODE E

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
Best Image Marketing/Dominion Enterprises/Trader Publishing    TELEPHONE NUMBER (Include Area Code)

ADDRESS
150 Granby Street, Norfolk, VA 23510    DFEH USE ONLY

CITY/STATE/ZIP    COUNTY    COUNTY CODE

NO. OF EMPLOYEES/MEMBERS (if known)
75+    DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year) 6/26/2007, continuing    RESPONDENT CODE

THE PARTICULARS ARE:

On 6/26/2007 I was:
- [ ] fired
- [X] laid off
- [ ] demoted
- [ ] harassed
- [ ] genetic characteristics testing
- [ ] forced to quit
- [ ] denied employment
- [ ] denied promotion
- [X] denied transfer
- [X] denied accommodation
- [ ] impermissible non-job-related inquiry
- [ ] other (specify) terminated while on family or medical leave
- [X] denied family or medical leave
- [ ] denied pregnancy leave
- [ ] denied equal pay
- [ ] denied right to wear pants
- [ ] denied pregnancy accommodation

by Terry Fowler, Membership Services Manager
Name of Person    Job Title (supervisor/manager/personnel director/etc.)

because of my:
- [X] sex
- [ ] age
- [ ] religion
- [ ] race/color
- [ ] national origin/ancestry
- [ ] marital status
- [ ] sexual orientation
- [ ] association
- [X] physical disability
- [ ] mental disability
- [ ] other (specify)
- [ ] cancer
- [ ] genetic characteristics
- [ ] (Circle one) filing protesting participating in investigation retaliation for)

the reason given by Terry Fowler
Name of Person and Job Title

Was because of
[please state what you believe to be reason(s)]
Alleged elimination of my position. I contend that I was laid off and/or that my employment was terminated because of my age, physical disability, and my need for reasonable accommodations.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complaint Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated 11-13-07
Middletown, CA
City

Rita Siglain
COMPLAINANT'S SIGNATURE

DATE FILED:

RECEIVED
NOV 27 2007
DEPT. OF FAIR EMPLOYMENT & HOUSING
SACRAMENTO DISTRICT OFFICE

DFEH-300-03 (01/03)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING    STATE OF CALIFORNIA

STATE OF CALIFORNIA - STATE AND CONSUMER SERVICES /    CY

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2000 "O" Street, Suite 120, Sacramento, CA 95814
(916) 445-5523 TTY (800) 700-2320 Fax (916) 323-6092
www.dfeh.ca.gov

ARNOLD SCHWARZENEGGER, Governor



October 4, 2007


ERIC G. YOUNG
ATTORNEY AT LAW
LAW OFFICES OF ERIC G. YOUNG
141 STONY CIRCLE, STE 202
SANTA ROSA, CA 95401

RE:    E200708E0387-02-pc
       SIGLAIN/TRADER PUBLISHING

Dear ERIC G. YOUNG:

### NOTICE OF CASE CLOSURE

This letter informs that the above-referenced complaint that was filed with the Department of Fair Employment and Housing (DFEH) has been closed effective September 28, 2007 because an immediate right-to-sue notice was requested. DFEH will take no further action on the complaint.

This letter is also the Right-To-Sue Notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

If a federal notice of Right-To-Sue is wanted, the U.S. Equal Employment Opportunity Commission (EEOC) must be visited to file a complaint within 30 days of receipt of this DFEH *Notice of Case Closure* or within 300 days of the alleged discriminatory act, whichever is earlier.

Notice of Case Closure
Page Two


DFEH does not retain case files beyond three years after a complaint is filed, unless
the case is still open at the end of the three-year period.

Sincerely,

Judith A. Miller
District Administrator


cc:    Case File

MANAGER
HUMAN RESOURCES DEPT
BEST IMAGE MARKETING
150 GRANBY STREET
NORFOLK, VA 23510

DFEH-200-43 (06/06)

# * * EMPLOYMENT * * *

COMPLAINT OF DISCRIMINATION UNDER
THE PROVISIONS OF THE CALIFORNIA
FAIR EMPLOYMENT AND HOUSING ACT

DFEH # E-200708-E-03567-01-pc

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.)
MS. RITA SIGLAIN

TELEPHONE NUMBER (INCLUDE AREA CODE)

ADDRESS
C/o ERIC G. YOUNG, ATTORNEY, 141 Stony Circle, Ste. 202

CITY/STATE/ZIP
Santa Rosa, CA 95401

COUNTY
Lake

COUNTY CODE
B

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE,
OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME:

NAME
Best Image Marketing/Dominion Enterprises/Trader Publishing

TELEPHONE NUMBER (include Area Code)

ADDRESS
150 Granby Street, Norfolk, VA 23510

DFEH USE ONLY

CITY/STATE/ZIP

COUNTY

COUNTY CODE

NO. OF EMPLOYEES/MEMBERS (If known)
75+

DATE MOST RECENT OR CONTINUING DISCRIMINATION
TOOK PLACE (month, day, and year) 6/26/2007

RESPONDENT CODE

THE PARTICULARS ARE:

On 6/26/2007 and prior was

- [ ] hired
- [X] laid off
- [ ] demoted
- [ ] harassed
- [ ] genetic characteristics testing
- [ ] forced to quit

- [ ] denied employment
- [ ] denied promotion
- [ ] denied transfer
- [X] denied accommodation
- [ ] impermissible non-job-related inquiry
- [X] other (specify) terminated while on

- [X] denied family or medical leave
- [ ] denied pregnancy leave
- [ ] denied equal pay
- [ ] denied right to wear pants
- [ ] denied pregnancy accommodation

by Terry Fowler, Membership Services Manager   family or medical

Name of Person                    Job Title (supervisor/manager/personnel director/etc.)   leave

because of my:
- [ ] sex
- [ ] age
- [ ] religion
- [ ] ancestor
- [ ] national origin/ancestry
- [ ] marital status
- [ ] sexual orientation
- [ ] association
- [X] physical disability
- [ ] mental disability
- [ ] other (specify)
- [ ] cancer
- [ ] genetic characteristics
- (Circle one) filing;
Protesting; participating in
Investigation (retaliation for)

the reason given by  Terry Fowler

Name of Person and Job Title

Was because
of [please
state what
you believe to
be reason(s)]

Alleged elimination of my position. I contend that I was
laid off and/or that my employment was terminated because
of my physical disability and my need for reasonable
accommodations.

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I
want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the
DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair
Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters
stated on my information and belief, and as to those matters I believe it to be true.

Dated  9/12/07

At  Middletown, CA
City

*Rita Siglain*
COMPLAINANT'S SIGNATURE

DATE FILED:

DFEH-300-03 (01/05)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING



RECEIVED
SEP 28 2007
DEPT OF FAIR EMPLOYMENT & HOUSING
SACRAMENTO DISTRICT OFFICE

# RIGHT-TO-SUE COMPLAINT INFORMATION SHEET

DFEH needs a separate signed complaint for each employer, person, labor organization, employment agency, apprenticeship committee, state or local government agency you wish to file against. If you are filing against both a company and an individual(s), please complete separate complaint forms naming the company or an individual in the appropriate area.

Please complete the following so that DFEH can process your complaint and for DFEH for statistical purposes, and return with your signed complaint(s):

YOUR RACE/ETHNICITY (Check one).
__ African-American
__ African - Other
__ Asian/Pacific Islander (specify) _____
X Caucasian (Non-Hispanic)
__ Native American
__ Hispanic(specify) _____

YOUR PRIMARY LANGUAGE (specify)
English

YOUR AGE: 59

IF FILING BECAUSE OF YOUR NATIONAL ORIGIN/ANCESTRY, YOUR NATIONAL ORIGIN/ANCESTRY (specify)

IF FILING BECAUSE OF DISABILITY, YOUR DISABILITY:
__ AIDS
__ Blood/Circulation
__ Brain/Nerves/Muscles
__ Digestive/Urinary/Reproduction
__ Hearing
__ Heart
__ Limbs (Arms/Legs)
__ Mental
__ Sight
__ Speech/Respiratory
X Spinal/Back

IF FILING BECAUSE OF MARITAL STATUS, YOUR MARITAL STATUS: (Check one)
__ Cohabitation
__ Divorced
__ Married
__ Single

IF FILING BECAUSE OF RELIGION, YOUR RELIGION: (specify)

IF FILING BECAUSE OF SEX, THE REASON:
__ Harassment
__ Orientation
__ Pregnancy
__ Denied Right to Wear Pants
__ Other Allegations (List)

DFEH-300-03-1 (01/05)
Department of Fair Employment and Housing
State of California

YOUR GENDER:  X Female __ Male

YOUR OCCUPATION:
__ Clerical
__ Craft
__ Equipment Operator
__ Laborer
__ Manager
__ Paraprofessional
X Professional  writer/editor
__ Sales
__ Service
__ Supervisor
__ Technician

HOW YOU HEARD ABOUT DFEH:
X Attorney
__ Bus/BART Advertisement
__ Community Organization
__ EEOC
__ EDD
__ Friend
__ Human Relations Commission
__ Labor Standards Enforcement
__ Local Government Agency
__ Poster
__ Prior Contact with DFEH
__ Radio
__ Telephone Book
__ TV
__ DFEH Web Site

DO YOU HAVE AN ATTORNEY WHO HAS AGREED TO REPRESENT YOU ON YOUR EMPLOYMENT DISCRIMINATION CLAIMS IN COURT? IF YOU CHECK "YES", YOU WILL BE RESPONSIBLE FOR HAVING YOUR ATTORNEY SERVE THIS DFEH COMPLAINT.

X Yes          __ No

PLEASE PROVIDE YOUR ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
Eric G. Young
141 Stony Circle, Ste. 202
Santa Rosa, CA 95401
707-575-5005

_Rita Sislian_ 9/12/07
Your Signature          Date

**EXHIBIT "B"**

SIGLAIN, RITA

## MUTUAL AGREEMENT TO ARBITRATE

This Mutual Agreement to Arbitrate ("Agreement") is entered into between Trader Publishing Company ("Trader") and RITA SIGLAIN, as of _May 17_, 20_05_. "You" and "your" refer to the undersigned employee and anyone acting on the employee's behalf, including, without limitation, the employee's family, heirs, agents and assigns. "Company" refers to: (1) Trader; (2) any of Trader's affiliates, successors, and assigns; and (3) any past or present officer, director, employee, consultant or agent of Trader or of any of its affiliates, successors and assigns.

Despite our best attempts to avoid them, differences can arise in the course of an employment relationship. Because resolving differences in the courts is rarely timely or cost-effective for either party, you and the Company are executing this Agreement in mutual consideration for obtaining the benefit of a speedy, impartial and cost-effective dispute resolution procedure. For the right to resolve your claims by arbitration rather than through the courts, and in consideration of payment to you by the Company of a "Loyalty Bonus" in accordance with the terms of a certain Agreement with Restrictive Covenants dated as of the date hereof between you and the Company and incorporated by reference hereto, you agree with the Company as follows:

1.    **Agreement to Arbitrate.** Except as otherwise provided in this Agreement, you and the Company agree to settle by final and binding arbitration any and all claims and controversies ("Arbitrable Claims") arising out of or relating to your employment by the Company including but not limited to: (a) any claim involving conduct alleged to be in violation of local, state or federal statutory or common law including, but not limited to, any claim of unlawful discrimination, harassment or retaliation, under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Fair Labor Standards Act, the Family and Medical Leave Act, and similar laws, as those laws are enacted, adopted, changed or amended from time to time; (b) any state contract or tort theories including but not limited to claims for negligence, defamation, libel, intentional infliction of emotional distress, and other intentional torts; and (c) any claim arising out of or relating to the ending of your employment with the Company. This includes but is not limited to any pre-existing disputes, known or unknown. The issue of whether a claim is subject to arbitration is to be resolved by the arbitrator.

2.    **Arbitration Procedures.** Arbitration shall be conducted in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") in effect at the time an Arbitrable Claim is made, a current copy of which you acknowledge having received and read. Such arbitration shall be filed with the AAA and heard at the offices of, or a location selected by, the AAA in the city nearest the location where the employee works. The Company shall bear the cost of the arbitrator's fees and other costs unique to arbitration in compliance with applicable law, except that you agree to pay an initial filing fee of $75.00 if you initiate the arbitration. The parties shall pay for their own costs and expert witness and attorney's fees, if any, unless the arbitrator awards fees and/or costs to the prevailing party. The arbitrator shall apply the applicable substantive law, law of remedies, and the law regarding the allocation of the burden of proof. The Federal Rules of Evidence and the Federal Rules of Civil Procedure shall apply, except that each party shall be limited to no more than three (3) depositions unless the arbitrator, upon application by the Company or you and upon a showing of good cause, authorizes the taking of additional depositions. The arbitrator shall issue a written opinion that includes the factual and legal basis for any decision and award.

3.    **Claims Not Covered By This Agreement.** This Arbitration Agreement does not apply to or cover the following claims: (a) claims by you for workers' compensation benefits, except any claim for retaliation in violation of a workers' compensation law; (b) claims by you for unemployment compensation benefits; (c) claims brought in a court of competent jurisdiction by either you or the Company to compel arbitration under this Arbitration Agreement, to enforce or to oppose enforcement of an arbitration award or to obtain preliminary injunctive and/or other equitable relief in support of claims to be prosecuted in an arbitration by either party; (d) claims based upon a pension or benefit plan that contains an arbitration or other dispute resolution procedure, in which case the provisions of such plan shall apply; and (e) claims concerning restrictive

covenants, confidentiality agreements or trade secrets. You are also not waiving the right to file or institute a complaint or charge with any government agency authorized to investigate or resolve employment-related matters, or any other comparable local, state, or federal agency.

4.    **At-Will Employment Not Modified.** The Arbitration Agreement is not intended to and does not modify your status as an at-will employee. This means that either you or the Company may terminate the employment relationship at any time for any reason.

5.    **Sole and Entire Agreement.** You and the Company acknowledge that this Arbitration Agreement constitutes the complete agreement of the parties on the subject matter contained herein, and supersedes any prior oral or written agreement or understanding on the subject matter contained herein.

6.    **Survival of Provisions.** The Arbitration Agreement shall continue in effect after your employment relationship with the Company ends and shall apply to any claim whether it arises or is asserted before, during or after the ending of your employment relationship with the Company. You and the Company agree that this Arbitration Agreement can be modified or revoked only by a writing signed by both you and the Company that specifically states that you and the Company both intend to modify or revoke this Arbitration Agreement.

7.    **Applicable Law.** This Arbitration Agreement is to be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

8.    **Severability.** If any one or more of the provisions of this Agreement shall, for any reason, be held by a court or other tribunal of competent jurisdiction to be invalid, void or unenforceable, in whole or in part, with any claim or class of claims, such adjudication shall in no way affect any other provisions of this Agreement or the validity or enforcement of the remainder of this Agreement, and any provision thus affected shall itself be modified only to the extent necessary to bring the provision within the applicable requirements of the law.

## EMPLOYEE'S ACCEPTANCE

I acknowledge that I have carefully read and understand the foregoing Arbitration Agreement, as well as the National Rules for the Resolution of Employment Disputes of the American Arbitration Association, and that I agree to be bound by and comply with all of its terms. I acknowledge that I have entered into this Arbitration Agreement voluntarily and that I am not relying on any misrepresentation, oral or written, as the effect, enforceability or meaning of this Arbitration Agreement, except as specifically set forth in this Arbitration Agreement. I understand and acknowledge that by signing this Arbitration Agreement, the Company and I are giving up the right to a jury trial and to a trial in a court of law with respect to any arbitrable claim either of us may have against the other.

*Rita Siglain*                *Rita Salain*            5-17-05
Employee's Name (Please Print)      Employee's Signature        Date

Trader Publishing Company agrees to follow this Arbitration Agreement in connection with the employee whose signature appears above.

**TRADER PUBLISHING COMPANY**

By: *Sunny R Sonner*

Its: *Executive Vice Pres*            Date: 5-17-05
        (Title)

2

SIGLAIN, RITA

# TRADER PUBLISHING COMPANY

## AGREEMENT WITH RESTRICTIVE COVENANTS

*FOR LOCATION'S USE*

Siglain, Rita
Employee's Last Name, First Name                          Location Name/Number

Senior Editor/Manager Research
Employee's Job Title        Dept                           Employee's ID Number

In consideration of Trader Publishing Company, a Virginia General Partnership, or its subsidiaries, or related business entities (hereinafter collectively "Trader") employing me, compensating me, providing me with benefits, investing the considerable time, energy and funds Trader will expend training and educating me in various phases of employment and/or management related to Trader's accounts; providing me with marketing and/or sales support; providing me with the benefit of Trader's research, market strategies and business plans; and other good and valuable consideration, the adequacy, sufficiency and receipt of which is hereby acknowledged, and intending to be legally bound, I hereby acknowledge that I understand and agree that the provisions hereof are part of and a condition of my employment or continuing employment with Trader.

As additional consideration for my execution and delivery to Trader of this Agreement and Trader's Mutual Agreement to Arbitrate (the "Arbitration Agreement"), which is incorporated by reference hereto, and my compliance with the terms of such agreements, Trader has agreed to pay me a Special Package in the amount set forth on Exhibit A hereto. Trader will pay me the Special Package as follows: (i) Trader shall pay me an amount equal to two-thirds (2/3) of the Special Package (the "Initial Payment") promptly following my acceptance of employment with Trader and execution and delivery of this Agreement and the Arbitration Agreement, and (ii) subject to the terms of this paragraph, Trader shall pay me an amount equal to the remaining one-third (1/3) of the Special Package (the "Second Payment") within fifteen (15) days after the first anniversary of the date I commenced employment with Trader ("hire date"). I acknowledge and agree that payment to me of the Second Payment is expressly conditioned upon my having been employed by Trader throughout the entire one-year period following my hire date, as well as my compliance during such period with all terms of this Agreement and the Arbitration Agreement; if my employment with Trader ends for any reason prior to the one-year anniversary of my hire date or if during such period I fail to comply with the terms of this Agreement or the Arbitration Agreement, the Second Payment shall not be paid or payable to me.

Initials: RS
Employee

## I.    NON-SOLICITATION OF CLIENTS

I agree that <u>during my employment and for one (1) year immediately following termination of my employment with Trader for any reason</u>, I will not, for the purpose of selling a Conflicting Product, either directly or indirectly, solicit any Clients of Trader upon whom I called or whom I serviced during the last twelve months of my employment with Trader (the "Restricted Clients"). My agreement "not to solicit" means that I will not, either directly or indirectly, during my employment and for a period of one year after the termination of my employment for any reason, initiate any contact or communication with any Restricted Client for the purpose of soliciting, inviting, encouraging, recommending or requesting any Restricted Client to do business with a Conflicting Organization in connection with a Conflicting Product or to otherwise discontinue, in whole or in part, its patronage and business relationship with Trader. My agreement "not to solicit" includes not only my conduct, but also the conduct of others acting on my behalf or in concert with me.

## II.    NON-USE AND NON-DISCLOSURE OBLIGATIONS

I agree that all records and Confidential Information, whether original, duplicated, computerized, memorized, handwritten, or in any other form, and all information contained therein, are confidential and the sole and exclusive property of Trader. I understand that the business of Trader and the nature of my employment will require me to have access to Confidential Information of and about Trader and its Clients. During my employment and for a period of two years thereafter, I will not use this information or remove any such records from the offices of Trader except for the sole purpose of conducting business on behalf of Trader. During my employment and for a period of two years thereafter, I agree not to divulge or disclose this information to any third party and under no circumstances will I reveal or permit this information to become known by any competitor of Trader.

## III.    DUTY OF LOYALTY

I agree that at all times during my employment, I owe Trader a duty of loyalty and a duty to act in good faith. I agree that during my employment, I will not individually, or in combination with any other employee, individual, or competitor of Trader, violate or breach the terms of this agreement.

## IV.    CONFIDENTIAL AND PROPRIETARY DATA OF FORMER EMPLOYERS

I understand that I am obligated to my previous employers to protect the confidentiality of proprietary data learned while in their employ. I agree that the unauthorized disclosure by me to Trader of any confidential information belonging to others will constitute a breach of this Agreement by me.

Initials: RS
Employee

## V.    RETURN OF MATERIALS

I agree that, upon the termination of my employment with Trader or at the request of Trader at any time, I will immediately deliver to Trader all Trader property, as well as all materials, and copies thereof in any form whatsoever, that are in my possession or control and that contain or are related in any way to any Confidential Information.

## VI.    NON-RECRUITMENT OF EMPLOYEES

I acknowledge that Trader has a protectable interest in maintaining a stable and undisrupted workforce.    In support of this interest, and in further consideration for employment with the Company, I agree that <u>during my employment and for one (1) year immediately following termination of my employment for any reason</u>, I will not, on behalf of myself or on behalf of any other person, firm, corporation, or entity, directly or indirectly employ, solicit for employment, or otherwise seek to employ, retain, divert or take away any of the employees of Trader with whom I had contact or about whom I gained Confidential Information in the course of my employment with Trader, or in any other way assist or facilitate any such employment, solicitation or retention effort.

## VII.    NOTICE OF AGREEMENT TO SUBSEQUENT EMPLOYER

I agree that I will tell any prospective new employer, prior to accepting employment that this Agreement exists, and further, I agree to provide a true and correct copy of this Agreement to any prospective employer prior to accepting employment.    I further authorize Trader to provide a copy of this Agreement to my new employer.

## VIII.    TRADER'S REMEDIES

In the event that I breach, or Trader reasonably believes that I am about to breach, any of the covenants of paragraphs I, II, V or VI, I agree that Trader will be entitled to injunctive relief.    I recognize that Trader will suffer immediate and irreparable harm and that money damages will not be adequate to compensate Trader or to protect and preserve the status quo.    Therefore, I HEREBY CONSENT TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER, WITH OR WITHOUT NOTICE, AND A PRELIMINARY OR PERMANENT INJUNCTION ordering:

(a) that I immediately return to Trader all Confidential Information as defined in this Agreement, in any form whether original, copied, computerized, handwritten, or recreated, and that I be enjoined and restrained from using or disclosing all said Confidential Information and records; and

(b) that, for a period of one year, commencing from the date any injunction is issued by a court pursuant to this Agreement; I be enjoined from soliciting any Client upon whom I called or whom I serviced during the last twelve months of my employment with Trader; and further, that I be enjoined from accepting business from any Client whom I have solicited in violation of this Agreement; and

2/CA: ND; CO (IL,MO; NB; VT; WI (X)          Page 3 of 7          Initials: _RS_
Employee

(c) that, for a period of one year, commencing from the date any injunction is issued by a court pursuant to this Agreement, I be enjoined from employing, soliciting for employment, or otherwise seeking to employ, retain, divert or take away any of the employees of Trader with whom I had contact or about whom I gained confidential information in the course of my employment with Trader, or in any other way assisting or facilitating any such employment, solicitation or retention effort.

I further agree that the restraints set forth in paragraphs I and II shall apply to each and every Client upon whom I called or whom I serviced during the last twelve months of my employment with Trader. I understand that that the identity of Trader's Clients sometimes may be ascertained by referencing Trader's publications or other public resources. Nonetheless, I acknowledge that as a result of my employment with Trader, I will be acting as a representative of Trader, utilizing Trader's assets and resources, and benefiting from Trader's goodwill, name recognition and reputation in regard to these Clients.

## IX.     GOVERNING LAW AND JURISDICTION

This Agreement will be governed by, construed, interpreted, and its validity determined, under the law of the State in which I last worked for Trader. I hereby irrevocably and unconditionally submit to the nonexclusive jurisdiction of the United States District Court or State Court which has original jurisdiction for the judicial district or county in which I last worked for Trader, and any appellate court from these courts, in any action or proceeding arising out of or relating to this Agreement.

## X.     ATTORNEYS' FEES

I further agree that if Trader prevails in any suit or proceeding to enforce its rights under this Agreement, I will indemnify Trader for all expenses of every nature and character incurred by Trader including, without limitation, all reasonable attorneys' fees.

## XI.     NO WAIVER OF BREACH OR REMEDY

A waiver by Trader of the breach of any of the provisions of this Agreement by me shall not be deemed a waiver by Trader of any subsequent breach, nor shall recourse to any remedy hereunder be deemed a waiver of any other or further relief or remedy provided for herein. No waiver shall be effective unless made in writing and signed by the Chief Executive Officer of Trader.

## XII.     BINDING EFFECT & ASSIGNABILITY

This Agreement is assignable by Trader. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors, assigns, affiliated entities, and any party-in-interest. I agree and understand that, should Trader be acquired by, merge with, or otherwise combine with another corporation or

Initials: _PS_
Employee

business entity, the surviving entity will have all rights to enforce the terms of this Agreement as if it were Trader itself enforcing the Agreement.

## XIII.  EMPLOYMENT AT WILL

Nothing by the way of this Agreement is intended to nor shall affect the at-will nature of my employment with Trader.  My employment with the Company shall terminate at the will of either myself or Trader, with or without cause and with or without notice at any time.  This at-will relationship cannot be changed or altered in any way unless expressly modified in a writing signed by the Chief Executive Officer of Trader.

## XIV.  ENTIRE AGREEMENT

This Agreement contains the entire agreement of the parties with respect to the subject matter hereof, and supersedes any existing Agreement entered into by me and Trader relating generally to the same subject matter and shall be effective as of the date of complete execution by me.  The parties may only change this Agreement by executing an additional written and signed agreement.

## XV.  SEVERABILITY

If any provision of this Agreement is held to be unenforceable, then this Agreement will be deemed amended to the extent necessary to render the otherwise unenforceable provision, and the rest of the Agreement, valid and enforceable.  If a court declines to amend this Agreement as provided herein, the invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of the remaining provisions, which shall be enforced as if the offending provision had not been included in this Agreement.

## XVI.  DEFINITIONS

A.    "Confidential Information" means Trader's trade secrets.  It also means other Trader, Trader employee, and Trader Client information which is not generally known, and is proprietary to Trader, its employees, and its Clients.  It includes, but is not limited to all items, materials and information (whether or not reduced to writing and whether or not patentable or copyrightable), that belong to Trader or have been confidentially provided to Trader by its clients or other third parties and that are related to (a) the past, present and future business endeavors of Trader, or (b) the research and development or inventions of Trader, and that are kept confidential and secret by Trader.   Confidential Information includes, among other things:   client data; business practices; sales records; invoices; information contained in client files and information provided by clients pertaining to those clients; financial information, data or statements; circulation and distribution data; the existence and contents of agreements; product research and development; existing and future product plans, designs, and performance specifications; marketing plans, strategies or

schematics; the prices Trader obtains or has obtained for the sale of, or at which it sells or has sold products; and computer data, documentation, algorithms, processes and know-how;

Employee

computer programs and software, Trader employee performance evaluations, employee compensation information, and the information contained therein; and all other non-public information of Trader and its employees. "Confidential Information" does not include anything described above which is now generally known by parties other than Trader and/or its employees (unless furnished by clients or third parties as described above), or becomes generally known, through no act or failure to act of me.

    A.    "Client" shall mean any individual, person, business or entity that has consumed, obtained, retained and/or purchased any services or products offered or sold by Trader during the last twelve months.

    B.    "Conflicting Organization" means any person or organization engaged (or about to become engaged) in research, development, marketing, selling, or servicing with respect to a Conflicting Product.

    C.    "Conflicting Product" means any product or service which is the same as, similar to, or competes with any Trader product, process or service with which I have worked during the last twelve months of my employment at Trader, or about which I have acquired Confidential Information.

**I ACKNOWLEDGE AND AGREE THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT, THAT I HAVE BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL CONCERNING THE TERMS OF THIS AGREEMENT, AND THAT I AGREE TO THE TERMS OF THIS AGREEMENT. FURTHERMORE, I ACKNOWLEDGE RECEIPT OF A COPY OF THIS AGREEMENT AND UNDERSTAND THAT THE ORIGINAL OF THIS AGREEMENT WILL BECOME PART OF MY PERSONNEL FILE.**

TRADER PUBLISHING COMPANY

BY: _Rita Siglain_
Employee's Signature

_Rita Siglain_
Employee's Name (Print)

BY: _Sunny R Sonner_
Manager's Signature

_Sunny R Sonner_
Manager's Name (Print)

_Executive Vice Pres._
Title

DATE: _5-17-05_

DATE: _5-17-05_

## EXHIBIT A

### Rita Siglain

**Special Package**                                                           $13,814.00

Initials: 
Employee

Attachment 2

SIGLAIN, RITA

## MUTUAL AGREEMENT TO ARBITRATE

This Mutual Agreement to Arbitrate ("Agreement") is entered into between Trader Publishing Company ("Trader") and RITA SIGLAIN, as of _May 17_, 20_05_. "You" and "your" refer to the undersigned employee and anyone acting on the employee's behalf, including, without limitation, the employee's family, heirs, agents and assigns. "Company" refers to: (1) Trader; (2) any of Trader's affiliates, successors, and assigns; and (3) any past or present officer, director, employee, consultant or agent of Trader or of any of its affiliates, successors and assigns.

Despite our best attempts to avoid them, differences can arise in the course of an employment relationship. Because resolving differences in the courts is rarely timely or cost-effective for either party, you and the Company are executing this Agreement in mutual consideration for obtaining the benefit of a speedy, impartial and cost-effective dispute resolution procedure. For the right to resolve your claims by arbitration rather than through the courts, and in consideration of payment to you by the Company of a "Loyalty Bonus" in accordance with the terms of a certain Agreement with Restrictive Covenants dated as of the date hereof between you and the Company and incorporated by reference hereto, you agree with the Company as follows:

1.  **Agreement to Arbitrate.** Except as otherwise provided in this Agreement, you and the Company agree to settle by final and binding arbitration any and all claims and controversies ("Arbitrable Claims") arising out of or relating to your employment by the Company including but not limited to: (a) any claim involving conduct alleged to be in violation of local, state or federal statutory or common law including, but not limited to, any claim of unlawful discrimination, harassment or retaliation, under Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Fair Labor Standards Act, the Family and Medical Leave Act, and similar laws, as those laws are enacted, adopted, changed or amended from time to time; (b) any state contract or tort theories including but not limited to claims for negligence, defamation, libel, intentional infliction of emotional distress, and other intentional torts; and (c) any claim arising out of or relating to the ending of your employment with the Company. This includes but is not limited to any pre-existing disputes, known or unknown. The issue of whether a claim is subject to arbitration is to be resolved by the arbitrator.

2.  **Arbitration Procedures.** Arbitration shall be conducted in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") in effect at the time an Arbitrable Claim is made, a current copy of which you acknowledge having received and read. Such arbitration shall be filed with the AAA and heard at the offices of, or a location selected by, the AAA in the city nearest the location where the employee works. The Company shall bear the cost of the arbitrator's fees and other costs unique to arbitration in compliance with applicable law, except that you agree to pay an initial filing fee of $75.00 if you initiate the arbitration. The parties shall pay for their own costs and expert witness and attorney's fees, if any, unless the arbitrator awards fees and/or costs to the prevailing party. The arbitrator shall apply the applicable substantive law, law of remedies, and the law regarding the allocation of the burden of proof. The Federal Rules of Evidence and the Federal Rules of Civil Procedure shall apply, except that each party shall be limited to no more than three (3) depositions unless the arbitrator, upon application by the Company or you and upon a showing of good cause, authorizes the taking of additional depositions. The arbitrator shall issue a written opinion that includes the factual and legal basis for any decision and award.

3.  **Claims Not Covered By This Agreement.** This Arbitration Agreement does not apply to or cover the following claims: (a) claims by you for workers' compensation benefits, except any claim for retaliation in violation of a workers' compensation law; (b) claims by you for unemployment compensation benefits; (c) claims brought in a court of competent jurisdiction by either you or the Company to compel arbitration under this Arbitration Agreement, to enforce or to oppose enforcement of an arbitration award or to obtain preliminary injunctive and/or other equitable relief in support of claims to be prosecuted in an arbitration by either party; (d) claims based upon a pension or benefit plan that contains an arbitration or other dispute resolution procedure, in which case the provisions of such plan shall apply; and (e) claims concerning restrictive

covenants, confidentiality agreements or trade secrets. You are also not waiving the right to file or institute a complaint or charge with any government agency authorized to investigate or resolve employment-related matters, or any other comparable local, state, or federal agency.

4.    **At-Will Employment Not Modified.** The Arbitration Agreement is not intended to and does not modify your status as an at-will employee. This means that either you or the Company may terminate the employment relationship at any time for any reason.

5.    **Sole and Entire Agreement.** You and the Company acknowledge that this Arbitration Agreement constitutes the complete agreement of the parties on the subject matter contained herein, and supersedes any prior oral or written agreement or understanding on the subject matter contained herein.

6.    **Survival of Provisions.** The Arbitration Agreement shall continue in effect after your employment relationship with the Company ends and shall apply to any claim whether it arises or is asserted before, during or after the ending of your employment relationship with the Company. You and the Company agree that this Arbitration Agreement can be modified or revoked only by a writing signed by both you and the Company that specifically states that you and the Company both intend to modify or revoke this Arbitration Agreement.

7.    **Applicable Law.** This Arbitration Agreement is to be governed by and construed in accordance with the laws of the Commonwealth of Virginia.

8.    **Severability.** If any one or more of the provisions of this Agreement shall, for any reason, be held by a court or other tribunal of competent jurisdiction to be invalid, void or unenforceable, in whole or in part, with any claim or class of claims, such adjudication shall in no way affect any other provisions of this Agreement or the validity or enforcement of the remainder of this Agreement, and any provision thus affected shall itself be modified only to the extent necessary to bring the provision within the applicable requirements of the law.

### EMPLOYEE'S ACCEPTANCE

I acknowledge that I have carefully read and understand the foregoing Arbitration Agreement, as well as the National Rules for the Resolution of Employment Disputes of the American Arbitration Association, and that I agree to be bound by and comply with all of its terms. I acknowledge that I have entered into this Arbitration Agreement voluntarily and that I am not relying on any misrepresentation, oral or written, as the effect, enforceability or meaning of this Arbitration Agreement, except as specifically set forth in this Arbitration Agreement. I understand and acknowledge that by signing this Arbitration Agreement, the Company and I are giving up the right to a jury trial and to a trial in a court of law with respect to any arbitrable claim either of us may have against the other.

_Rita Sclain_
Employee's Name (Please Print)

_Rita Sclain_            _5-17-05_
Employee's Signature              Date

Trader Publishing Company agrees to follow this Arbitration Agreement in connection with the employee whose signature appears above.

**TRADER PUBLISHING COMPANY**

By: _Sunny R Sooner_

Its: _Executive Vice Pres_
            (Title)

Date: _5-17-05_

2

**PROOF OF SERVICE**

I am employed in the City and County of San Francisco.  I am over the age of eighteen (18) years, and not a party to the within above-entitled action.  My business address is 225 Bush Street, 6th Floor, San Francisco, California 94104-4207.  On April 23, 2008, pursuant to CCP 415.10, I served the following on each party listed below:

DEMAND FOR ARBITRATION

X    (BY MAIL) By depositing for collection and mailing, following ordinary business practices, a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid.  I am readily familiar with this business' practice for collection and processing of correspondence for mailing with the U.S. Postal Service.  The correspondence is deposited with the U.S. Postal Service the same day in the ordinary course of business.

Eric G. Young, Esq.
Law Offices of Eric G. Young
141 Stony Point Circle, Suite 202
Santa Rosa, CA 95401
Tel:  707-575-5005
Fax:  707-575-5395
*Attorney for Plaintiff RITA SIGLAIN*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 23, 2008, at San Francisco, California.

Mardoux Torrise

Page 1 – Proof of Service
Case No. CV 405233

Exhibit B

Search ⊕
Checkout ⊕

| ABOUT US | DISPUTE RESOLUTION SERVICES | FILE A CASE | AAA UNIVERSITY | NEUTRALS |
|---|---|---|---|---|

CONTACT US

PRINT VERSION

## Employment Arbitration Rules and Mediation PROCEDURES
Amended and Effective July 1, 2006
To view the summary of changes, click here.

Table of Contents

Introduction
Role of the American Arbitration Association
Legal Basis of Employment ADR
The Fairness Issue: The Due Process Protocol
AAA's Employment ADR Rules
AAA's Policy on Employment ADR
Notification
Costs of Employment Arbitration
Designing an ADR Program
Alternative Dispute Resolution Options
Types of Disputes Covered

Employment Arbitration Rules and Mediation Procedures
1. Applicable Rules of Arbitration
2. Notification
3. AAA as Administrator of the Arbitration
4. Initiation of Arbitration
5. Changes of Claim
6. Jurisdiction
7. Administrative and Mediation Conferences
8. Arbitration Management Conference
9. Discovery
10. Fixing of Locale
11. Date, Time, and Place of Hearing
12. Number, Qualifications, and Appointment of Neutral Arbitrators
13. Party Appointed Arbitrators
14. Appointment of Chairperson by Party-Appointed Arbitrators or Parties
15. Disclosure
16. Disqualification of Arbitrator
17. Communication with Arbitrator
18. Vacancies
19. Representation
20. Stenographic Record
21. Interpreters
22. Attendance at Hearings
23. Confidentiality
24. Postponements

25. Oaths
26. Majority Decision
27. Dispositive Motions
28. Order of Proceedings
29. Arbitration in the Absence of a Party or Representative
30. Evidence
31. Inspection
32. Interim Measures
33. Closing of Hearing
34. Reopening of Hearing
35. Waiver of Oral Hearing
36. Waiver of Objection/Lack of Compliance with These Rules
37. Extensions of Time
38. Serving of Notice
39. The Award
40. Modification of Award
41. Release of Documents for Judicial Proceedings
42. Applications to Court
43. Administrative Fees
44. Neutral Arbitrator's Compensation
45. Expenses
46. Deposits
47. Suspension for Non-Payment
48. Interpretation and Application of Rules

Costs of Arbitration (including AAA Administrative Fees)
For Disputes Arising Out of Employer-Promulgated Plans
Filing Fees
Hearing Fees
Postponement/Cancellation Fees
Hearing Room Rental
Abeyance Fees
Expenses

For Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts

Filing Fees and Case Service Fees
Refund Schedule
Hearing Room Rental
Abeyance Fee
Expenses

For Disputes Proceeding Under the Supplementary Rules for Class Action Arbitration ("Supplementary Rules")

Optional Rules for Emergency Measures of Protection
O-1. Applicability
O-2. Appointment of Emergency Arbitrator
O-3. Schedule
O-4. Interim Award
O-5. Constitution of the Panel
O-6. Security
O-7. Special Master
O-8. Costs

Case 3:08-cv-02143-MMC   Document 5   Filed 04/28/2006

Employment Mediation Procedures

1. Agreement of Parties

2. Initiation of Mediation

3. Request for Mediation

4. Appointment of Mediator

5. Qualifications of Mediator

6. Vacancies

7. Representation

8. Date, Time, and Place of Mediation

9. Identification of Matters in Dispute

10. Authority of Mediator

11. Privacy

12. Confidentiality

13. No Stenographic Record

14. Termination of Mediation

15. Exclusion of Liability

16. Interpretation and Application of Rules

17. Expenses

Mediation Fee Schedule

Introduction

Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age, and disability.

As courts and administrative agencies become less accessible to civil litigants, employers and their employees now see alternative dispute resolution ("ADR") as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals, and employee handbooks.

Increasingly, corporations and their employees look to the American Arbitration Association as a resource in developing prompt and effective employment procedures for employment-related disputes. These rules have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field. These procedures benefit both the employer and the individual employee by making it possible to resolve disputes without extensive litigation.

Role of the American Arbitration Association

The American Arbitration Association, founded in 1926, is a not-for-profit, public service organization dedicated to the resolution of disputes through mediation, arbitration, elections, and other voluntary dispute resolution procedures. Millions of workers are now covered by employment ADR plans administered by the AAA.

In addition, the AAA provides education and training, specialized publications, and research on all forms of dispute settlement. With 30 offices worldwide and cooperative agreements with arbitral institutions in 63 other nations, the American Arbitration Association is the nation's largest private provider of ADR services.

For over 80 years, the American Arbitration Association has set the standards for the development of fair and equitable dispute resolution procedures. The development of the *Employment Arbitration Rules and Mediation Procedures,* and the reconstitution of a select and diverse roster of expert neutrals to hear and resolve disputes, are the most recent initiatives of the Association to provide private, efficient and cost-effective procedures for out-of-court settlement of workplace disputes.

Legal Basis of Employment ADR

Since 1990, Congress has twice re-affirmed the important role of ADR in the area of employment discrimination -- in the Americans with Disabilities Act in 1990, and a year later in Section 118 of the Civil Rights Act of 1991.

The United States Supreme Court has also spoken on the importance of ADR in the employment context. In Gilmer v. Interstate/Johnson Lane, 500 U.S. 20, 111 S.Ct. 1647 (1991), the Supreme Court refused to invalidate Gilmer's agreement with the New York Stock Exchange that he would arbitrate disputes with his employer (Interstate/Johnson Lane) simply because he was obliged to sign it in order to work as a securities dealer whose trades were executed on the Exchange. Although the Gilmer Court found that the Age Discrimination in Employment Act did not preclude arbitration of age discrimination claims, it specifically declined to decide whether employment arbitration agreements were "contracts of

An employer intending to incorporate these rules or to refer to the dispute resolution services of the AAA in an employment ADR plan, shall, at least 30 days prior to the planned effective date of the program:

    i.   notify the Association of its intention to do so and,
    ii.  provide the Association with a copy of the employment dispute resolution plan.

Compliance with this requirement shall not preclude an arbitrator from entertaining challenges as provided in Section 1. If an employer does not comply with this requirement, the Association reserves the right to decline its administrative services.

3. AAA as Administrator of the Arbitration

When parties agree to arbitrate under these rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in these rules, and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices.

4. Initiation of Arbitration

Arbitration shall be initiated in the following manner.

    a.   The parties may submit a joint request for arbitration.
    b.   In the absence of a joint request for arbitration:
        i.   The initiating party (hereinafter "Claimant[s]") shall:
            1.  File a written notice (hereinafter "Demand") of its intention to arbitrate at any office of the AAA, within the time limit established by the applicable statute of limitations. Any dispute over the timeliness of the demand shall be referred to the arbitrator. The filing shall be made in duplicate, and each copy shall include the applicable arbitration agreement. The Demand shall set forth the names, addresses, and telephone numbers of the parties; a brief statement of the nature of the dispute; the amount in controversy, if any; the remedy sought; and requested hearing location.
            2.  Simultaneously provide a copy of the Demand to the other party (hereinafter "Respondent[s]").
            3.  Include with its Demand the applicable filing fee, unless the parties agree to some other method of fee advancement.
        ii.  The Respondent(s) may file an Answer with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The Answer shall provide the Respondent's brief response to the claim and the issues presented. The Respondent(s) shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Claimant. If no answering statement is filed within the stated time, Respondent will be deemed to deny the claim. Failure to file an answering statement shall not operate to delay the arbitration.
        iii.  The Respondent(s):
            1.  May file a counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the Demand. The filing shall be made in duplicate. The counterclaim shall set forth the nature of the claim, the amount in controversy, if any, and the remedy sought.
            2.  Simultaneously shall send a copy of any counterclaim to the Claimant.
            3.  Shall include with its filing the applicable filing fee provided for by these rules.
        iv.  The Claimant may file an Answer to the counterclaim with the AAA within 15 days after the date of the letter from the AAA acknowledging receipt of the counterclaim. The Answer shall provide Claimant's brief response to the counterclaim and the issues presented. The Claimant shall make its filing in duplicate with the AAA, and simultaneously shall send a copy of the Answer to the Respondent(s). If no answering statement is filed within the stated time, Claimant will be deemed to deny the counterclaim. Failure to file an answering statement shall not operate to delay the arbitration.
    c.   The form of any filing in these rules shall not be subject to technical pleading requirements.

5. Changes of Claim

Before the appointment of the arbitrator, if either party desires to offer a new or different claim or counterclaim, such party must do so in writing by filing a written statement with the AAA and simultaneously provide a copy to the other party(s), who shall have 15 days from the date of such transmittal within which to file an answer with the AAA. After the appointment of the arbitrator, a party may offer a new or different claim or counterclaim only at the discretion of the arbitrator.

6. Jurisdiction

    a.   The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.
    b.   The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.
    c.   A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

7. Administrative and Mediation Conferences