1  consider it) and *Ferguson, supra,* 298 F.3d at 784. (same) (*Id.*) According to the *Davis* Court,
2  whether an employee is given time to consider the contract, or even how much time, is irrelevant.
3  (*Id.*) What matters is whether an employee has a meaningful opportunity to negotiate the terms
4  of the employment bargain or to opt of the bargain altogether. (*Id.* at 1073.)

5        Here, the circumstances are even more procedurally unconscionable than *Davis* or even
6  *Ingle I*. Unlike the employees in both of these cases, Plaintiff was given absolutely no time to
7  consider the ramifications of signing the Arbitration Agreement. Instead, she had the Arbitration
8  Agreement foisted on her at a "fast-paced, hectic, hurried " public gathering as part of
9  Defendant's corporate take over of her employer, BEST IMAGE. Defendant gave no opportunity
10 for negotiation of the Arbitration Agreement, and Plaintiff was not given an opportunity to "opt
11 out" if she wanted to stay employed.

12       Such circumstances present a high degree of procedural unconscionability. Therefore, the
13 Arbitration Agreement in this case should be held to be procedurally unconscionable and
14 unenforceable.

15       **2.    The Arbitration Agreement Is Unconscionable Because It Places Unreasonable And Arbitrary Limitations On Discovery, Depriving Plaintiff Of A Fair Opportunity To Vindicate Her Employment Law Claims**

17       "Adequate discovery is indispensable for the vindication of FEHA claims." (*Armendariz,*
18 *supra,* 24 Cal.4th at 104.) Accordingly, employees are entitled to "discovery sufficient to
19 adequately arbitrate their statutory claims." (*Id.* at 106.)

20       What constitutes "adequate discovery" has been addressed in a few post-*Armendariz*
21 opinions, one of which is important to deciding the outcome in the instant case. In *Fitz v. NCR*
22 *Corp.,* 118 Cal.App.4th 702 (2004), for example, the Court confronted this issue in a case
23 involving an arbitration agreement that limited both parties' discovery to two depositions plus
24 any number of expert witness depositions. The agreement also required the parties to exchange a
25 list of all exhibits and witnesses at least two weeks prior to the arbitration hearing. No other
26 discovery was allowed absent a compelling need for the discovery as determined by the

arbitrator. The agreement incorporated the rules of the American Arbitration Association (AAA).

In *Fitz*, the employee argued that the agreement unfairly and arbitrarily limited his rights to discovery. The employer argued that the agreement was not unfair because it mutually limited both parties' discovery rights.

In ruling that the arbitration agreement was unconscionable, the Court of Appeal began by rejecting the employer's mutuality argument, writing:

> "Though NCR contends that the ACT policy's limits on discovery are mutual because they apply to both parties, the curtailment of discovery to only two depositions does not have mutual effect and does not provide Fitz with sufficient discovery to vindicate her rights. "This is because the employer already has in its possession many of the documents relevant to an employment discrimination case as well as having in its employ many of the relevant witnesses."

(*Fitz, supra,* 118 Cal.App.4th at 716, citing *Mercuro v. Superior Court,* 96 Cal.App.4th 167, 183 (2002).)

The *Fitz* Court went on to distinguish the agreement it faced from the one faced in *Armendariz*, where the Supreme Court held that unlimited discovery did not, in and of itself, serve to invalidate an otherwise enforceable arbitration agreement. The *Armendariz* agreement incorporated the rules set forth in the California Arbitration Act (CAA). As the *Fitz* Court observed, the CAA "grants parties essentially the same discovery 'rights, remedies, and procedures ... as if the subject matter of the arbitration were pending before a superior court...'." (*Fitz, supra,* 118 Cal.App.4th at 718.) By contrast, the *Fitz* agreement incorporated the rules of the (AAA), which are designed to balance the need for discovery against the expedited nature of arbitration. (*Id.* at 718, fn 3.) Moreover, the employer went a step further and included language in its arbitration agreement that further limited discovery above and beyond what was permitted under the rules it incorporated. (*Id.*) The *Fitz* Court ultimately concluded that the arbitration agreement it confronted placed the employee at a significant disadvantage and was unenforceable. (*Id.* at 717.)

///

Motion for Declaratory and
Injunctive Relief                                   7

1  *Fitz* is highly instructive to the instant case. Just like *Fitz*, the Arbitration Agreement in this case incorporates AAA rules, thereby limiting Plaintiff's statutory discovery rights at the outset. Moreover, similar to *Fitz*, Defendant goes a step further in its Arbitration Agreement and limits discovery to a total of three depositions.[2] This "three-deposition" limit can be increased by the arbitrator upon a showing of good cause. Under the terms of the Arbitration Agreement, the limitation on depositions appears to apply to both percipient and expert depositions.

Just like *Fitz*, the Arbitration Agreement places Plaintiff at a disadvantage she would not experience if she were permitted to bring her claims in a court of law. Even though the Arbitration Agreement permits the taking of three depositions – one more than the agreement in *Fitz* – the fact that it applies to <u>both percipient and expert witness depositions</u> actually makes it <u>more disadvantageous</u> than the *Fitz* agreement. "Given the complexity of employment disputes, the outcomes of which are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice, it will be the unusual instance where the deposition of two witnesses will be sufficient to present a case." (*Fitz, supra*, 118 Cal.App.4th at 717.)

This statement applies with equal force to a situation where an Arbitration Agreement limits Plaintiff to three depositions - <u>including expert witnesses</u>. A new publication of the American Bar Association demonstrates that disability cases like Plaintiffs often turn on expert witness testimony and evidence. (John Parry, *Disability Discrimination Law, Evidence and Testimony*, 2008 ABA Comm. on Mental and Phys. Disability Law, p. 417.) Another ABA publication encourages plaintiffs to take the depositions of "the decision makers who decided to fire the plaintiff, one or more line supervisors or managers, and someone from the personnel or human resources department." (Daniel J. Rose, *Litigating the Employment Tort Case* (2nd ed.) ABA Tort and Insurance Practice Section, pp. 34-35.) (*See,* Young Declaration, Exhibit "D," filed herewith.)

---

[2] Aside from this limitation, the Federal Rules of Civil Procedure apparently apply to other discovery.

Motion for Declaratory and
Injunctive Relief                                    8

Here, Plaintiff claims that a variety of unlawful employment actions were taken against her and that, in addition to pecuniary loss, she has sustained emotional distress. Thus, it is reasonable to assume that both sides will have a mental health expert, an employment practices expert, and an economist. If Plaintiff wishes to depose these experts, then she will have used up <u>all of her allotted depositions</u>, leaving her with no depositions of percipient witnesses. (*See*, Young Declaration, filed herewith.) Given the imbalance of access to witnesses and evidence noted by *Fitz*, Plaintiff will be placed at a severe disadvantage in arbitration.

Moreover, the fact that the arbitrator in this case can, for good cause, increase the number of depositions is an "inadequate safety valve." (*Fitz, supra,* 118 Cal.App.4th at 717.) Even if the arbitrator in this case is not constrained by the same "impossibility" standard that was present in *Fitz*, Plaintiff must still face the same underlying rules – the AAA rules – which require the arbitrator to balance the need for additional discovery against the policy that arbitration be "expedited." (*Id.* at 718, fn. 3.) Moreover, it is speculation and conjecture to assume that Plaintiff will even be able to make the requisite showing of "good cause" without first being able to conduct sufficient discovery.

Finally, the Arbitration Agreement does not appear to appear to permit any form of judicial review in the event the arbitrator refuses to permit the additional discovery. Considering the public importance of the types of claims raised by Plaintiff, she should not be forced to undergo arbitration with the hope that she has the serendipity to draw an arbitrator willing to permit her to conduct discovery adequate to vindicate her civil rights. Therefore, an agreement such as the one that limits the employee's ability to conduct discovery should be held to be unenforceable.

    **3.**    **The Arbitration Agreement Is Not "Mutual" Because The Defendant Remains Able To Access The Courts To Vindicate Those Claims It Is Most Likely To Bring, While Plaintiff Is Relegated Solely To Binding Arbitration On Those Claims She Is Most Likely To Bring**

Although it is entitled "Mutual Agreement to Arbitrate," the Arbitration Agreement in

Motion for Declaratory and
Injunctive Relief         9

this case is anything but mutual when juxtaposed with the Agreement With Restrictive Covenants that was presented to Defendant's employees at the same time. (*See*, Plaintiff's Declaration, page 1, lines 16-22; Christensen Declaration, page 1, lines 24-27.) Under the terms of the Arbitration Agreement, Defendant's employees are required to arbitrate all employment-related disputes with the exception of certain administrative actions (e.g., workers' compensation claims, claims for unemployment insurance benefits, and the like.) However, under the terms of the Agreement With Restrictive Covenants, Defendant remains fully able to access courts to redress claims that its employees solicited its clients, disclosed trade secrets, or otherwise improperly used the company's proprietary materials. (*See*, Plaintiff's Declaration, Exhibit "A," Agreement With Restrictive Covenants, paragraph VIII.)

This precise situation was addressed by *Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107 (2004). In *Martinez,* an employee sued his employer for various unlawful employment practices, including national origin discrimination in violation of the FEHA. The employer moved to compel arbitration under the terms of a written agreement between the parties. Like the Arbitration Agreement in the instant case, the agreement in *Martinez* required the employee to arbitrate all employment-related disputes except for workers' compensation claims and claims for unemployment insurance benefits. Moreover, like the Arbitration Agreement, the *Martinez* agreement did not require the employer to arbitrate claims for "injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information..." (*Id.* at 112, fn 1.) The trial court granted the employer's motion to compel arbitration.

In reversing the trial court, the Court of Appeal held that arbitration agreement lacked mutuality and was "substantively unconscionable" because "it requires the employee but not the employer to arbitrate claims." (*Martinez, supra,* 118 Cal.App.4th at 114.) Significantly, the *Martinez* Court rejected the employer's assertion that the agreement was mutual because it required both parties to arbitrate employment-related disputes, writing:

Motion for Declaratory and
Injunctive Relief                                           10