> "This provision...requires employees to arbitrate the claims they are most likely to assert...while simultaneously permitting [the employer] to litigate in court the claims it is most likely to assert against its employees. Claims for unpaid wages, wrongful termination, employment discrimination and the like invariably are brought by employees, while claims involving trade secrets, misuse or disclosure of confidential information, and unfair competition typically are asserted only by employers."

(*Id.* at 115.) (*See also, Mercuro v. Superior Court*, 96 Cal.App.4th 167, 175-177 (2002) [in accord with holding]; *O'Hare v. Municipal Resources Consultants*, 107 Cal.App.4th 267 (2003) [same].)

The Arbitration Agreement in this case is substantively unconscionable for the same reasons decried in *Martinez* and *Mercuro*. The only distinction here is that the Arbitration Agreement and the Agreement With Restrictive Covenants were presented to the Defendant's employees on May 17, 2005 as two documents instead of one. However, in paragraph 2, the Agreement With Restrictive Covenants expressly incorporated the Arbitration Agreement. Moreover, both documents were presented to Defendant's employees at the same time as part of a larger package of employment-related documents. This distinction is one of form rather than substance and should be disregarded. (Cal. Civ. Code, § 3528.)

Because the Arbitration Agreement in this case is exactly the same type of one-sided agreement condemned in *Martinez* and *Mercuro*, it should be held to be substantively unconscionable and unenforceable.

    **4.    The Arbitration Agreement Was Misrepresented To Plaintiff As Being "Just A First Step" In The Event An Employment Dispute Ever Arose With Defendant**

Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at the time. (*Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267, 1281 (2004).) Surprise may considered a component of procedural unconscionability. "The component of surprise arises when the challenged terms are 'hidden in a prolix printed form drafted by the party seeking to enforce them'." (*Id.*, citing *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 656 (2004).)

Motion for Declaratory and
Injunctive Relief                                         11

In this case, the Arbitration Agreement should also be considered procedurally unconscionable because not only was it presented as a boilerplate agreement to all of the former employees of BEST IMAGE, but the nature of the arbitration it required was also misrepresented by Defendant's representatives at the May 17, 2005. (*See,* Plaintiff's Declaration, page 2, lines 4-8; Christensen Declaration, page 2, lines 16-25.) These circumstances have now resulted in both surprise and oppression to Plaintiff.

### 5. The Arbitration Agreement Is Substantively Unconscionable Because It Mandates The Use Of The American Arbitration Association And Does Not Guarantee A Neutral Arbitrator

"Of all the types of bias that can affect adjudication, pecuniary interest has long received the most unequivocal condemnation and the least forgiving scrutiny." (*Haas v. County of San Bernardino,* 27 Cal.4th 1017, 1024 (2002). "[C]ourts do not, when faced with a claim of bias arising from financial interest, decide whether the adjudicator was in fact influenced. The standard continues instead to be...whether the adjudicator's financial interest would offer a possible temptation to average person as judge not to hold the balance nice, clear and true." (*Id.* at 1026.) "Various studies show that arbitration is advantageous to employers not only because it reduces the cost of litigation, but also because it reduces the size of the award that an employee is likely to get, particularly if the employer is a 'repeat player' in the arbitration system." (*Armendariz, supra,* 24 Cal.4th at 116.)

A critical flaw in the arbitration program at issue here is that it does not ensure a neutral adjudicator. Here, the Arbitration Agreement does not allow Plaintiff to participate in the selection of the arbitration provider and instead mandates the use of the AAA. AAA has taken a highly public position against trial lawyers which has created a conflict of interest and bias against plaintiffs' attorneys who are trial attorneys and, in particular, members of the San Francisco Trial Lawyers Association. (*See,* Young Declaration, Exhibit "C," filed herewith.) Therefore, because the Arbitration Agreement does not allow employees to participate in the

///

selection of the arbitration organization and because it specifically mandates the use of the AAA, which is biased against plaintiffs' attorney, the provision is unconscionable.

Contrary to what Defendant may assert, *Armendariz* clearly recognized the danger of the "repeat player" effect and acknowledged the need for safeguards to protect against it. *Armendariz* observed that the fact "most likely to induce bias" was that "the employer is a 'repeat player' in the arbitration system" and is therefore "more likely to be a source of business for the arbitrator." (*Armendariz, supra,* 24 Cal.4th 111.) *Mercuro* also recognized this danger and held unconscionable an arbitration clause which did not guarantee a neutral arbitrator. (*Mercuro, supra,* 96 Cal.App.4th at 178.) Because the Arbitration Agreement does not guarantee a neutral arbitrator, it is substantively unconscionable.

### 6. The Arbitration Agreement Contains A Choice Of Law Provision That Should Be Declared Void As Against Public Policy

Unlike many of the most commonly-cited employment law cases involving arbitration agreements, the Arbitration Agreement here contains a "choice of law" provision in paragraph 7, which states:

> "7. <u>Applicable Law</u>. This Arbitration Agreement is to be governed by and construed in accordance with the laws of the Commonwealth of Virginia."

(*See,* Plaintiff's Declaration, Exhibit "A," filed herewith.)

This choice of law provision presents unique problems for the Court to consider in ruling on Plaintiff's Motion.

Most recently, the issue of the enforceability of a forum selection clause in the employment arbitration context arose in *Olinick v. BMG Entertainment*, 138 Cal.App.4th 1286 (2006). There, the employer and employee (a large corporation and lawyer), after nine months of negotiations, entered into an employment agreement that contained a choice of law provision similar to the one in the instant case, which stated:

///

///

Motion for Declaratory and
Injunctive Relief                                    13

> "This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of laws."

(*Olinick, supra,* 138 Cal.App.4th at 1291.)

Afterwards, the employer discharged the employee, and the employee sued claiming age discrimination in violation of the FEHA. The employer moved to stay the action or dismiss it on *forum nonconveniens* grounds. The employer argued, in part, that the choice of law provision should be enforced because New York provided just as adequate a forum for vindicating the plaintiff's claims as did California. The trial court agreed, and plaintiff appealed.

After reviewing selected case law involving choice of law provisions in the commercial context, the *Olinick* Court concluded that the choice of law provision before it applied to plaintiff's employment law claims, stating: "If <u>sophisticated parties</u>, such as those now before us, truly intended the result being advocated by [plaintiff], they should have specified what jurisdiction's law applies to what issues." (*Olinick, supra,* 138 Cal.App.4th at 1299.) (Emphasis added.) The Court went on to reject plaintiff's public policy argument, holding that New York provided adequate laws and remedies to vindicate plaintiff's age discrimination claims. (*Id.* at 1301-1304.)

Contrary to the limited case law examined by the *Olinick* Court, however, choice of law provisions have not always fared so well in California. In *Hall v. Superior Court*, 150 Cal.App.3d 411 (1983), a case not even mentioned in *Olinick's* survey of commercial cases, a group of business partners entered into a commercial transaction which provided that any disputes would be "governed by and enforced in accordance with the laws of the State of Nevada... ." (*Id.* at 414.) When a subsequent dispute arose among the parties, three filed suit in California. The defendants moved to stay or dismiss the litigation, relying on the Nevada choice of law provision. The trial court granted defendants' motion.

On appeal, the Court reversed, writing:

> "While California does not have any public policy against a choice of law provision, where it is otherwise appropriate...and choice of

Motion for Declaratory and
Injunctive Relief                          14