1  DILLINGHAM & MURPHY, LLP
   CARLA J. HARTLEY (STATE BAR NO. 117213)
2  WILLIAM P. WILSON (STATE BAR NO. 230444)
3  225 Bush Street, 6th Floor
   San Francisco, California 94104-4207
4  Telephone:   (415) 397-2700
   Facsimile:   (415) 397-3300
5
   Attorneys for Defendant
6  DOMINION ENTERPRISES

7

8                    UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10 | RITA SIGLAIN, an individual,                    | Case No. CV-08-2108 JL
11 |                  Plaintiff,                      | DEFENDANT DOMINION
   |                                                  | ENTERPRISES' MEMORANDUM OF
12 |       v.                                         | POINTS AND AUTHORITIES IN
   |                                                  | OPPOSITION TO PLAINTIFF'S MOTION
13 | TRADER PUBLISHING COMPANY, a Virginia            | FOR DECLARATORY AND
   | General Partnership; DOMINION                    | INJUNCTIVE RELIEF ENJOINING
14 | ENTERPRISES, INC., a Virginia corporation;       | ENFORCEMENT OF ARBITRATION
   | LANDMARK COMMUNICATIONS, INC., a                 | AGREEMENT AND REPLY IN SUPPORT
15 | Virginia corporation; BEST IMAGE                 | OF DEFENDANT'S MOTION TO STAY
   | MARKETING, INC., a California corporation,
16 |
   |                  Defendants.                     | Date:   July 2, 2008
17 |                                                  | Time:   9:30 a.m.
   |                                                  | Dept.:  Courtroom F
18 |                                                  | Judge:  The Honorable James Larson
   |                                                  |         Magistrate Judge

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page No.

Table of Authorities .................................................................................. ii

I.   INTRODUCTION .......................................................................... 1

II.  FACTUAL BACKGROUND ........................................................ 2

III. PROCEDURAL BACKGROUND ................................................ 3

IV.  ARGUMENT .................................................................................. 4

    A.  The Arbitration Agreement Must Be
        Interpreted In Accordance With Virginia Law ................... 4

    B.  The Mutual Agreement to Arbitrate
        Is Enforceable Under California Law .................................. 6

        (1)  The Arbitration Agreement Was Not
            "Highly" Procedurally Unconscionable ................... 8

        (2)  The Limitation on Depositions
            Do Not Violate Armendariz ....................................... 9

        (3)  Plaintiff's "Misrepresentation"
            Argument is Specious ................................................. 11

        (4)  Plaintiff Has Failed to Establish that the AAA
            Or Assigned Arbitrator is Not Neutral ..................... 12

        (5)  To the Extent the Exclusion of Claims
            For Restrictive Covenants is Unconscionable
            the Provision Can be Severed .................................... 13

V.   CONCLUSION ............................................................................... 14

# TABLE OF AUTHORITIES

Page No.

CASES

**Federal**

Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.
  473 U.S. 614 (1985) .................................................................................................. 6

Moses H. Cone Memorial Hospital v. Mercury Construction Corp.
  460 U.S. 1 (1983) ................................................................................................. 5, 6

**US Court of Appeals, Second Circuit - New York**

Gold v. Deutsche Aktiengesellschaft
  365 F.3d 144 (2nd Cir. 2004.) ............................................................................... 12

**US Court of Appeals, Fourth Circuit - Virginia**

Hightower v. GMRI, Inc.
  272 F.3d 239 (4th Cir. 2001) .................................................................................. 5

Hooters of America v. Phillips
  173 F.3d 933 (4th Cir. 1999) ............................................................................... 5, 6

O'Neil v. Hilton Head Hospital
  115 F.3d 272 (4th Cir. 1997) .................................................................................. 5

**State**

Armendariz v. Foundation Healthcare Psych Services
  (2000) 24 Cal.4th 83 ..................................................................................... *passim*

Christensen v. Dewer Developments
  (1983) 33 Cal.3d 778 ............................................................................................. 7

Doers v. Golden Gate Bridge etc. District
  (1979) 23 Cal.3d 180, ............................................................................................. 7

Fitz v. NCR Corp.
  (2004) 118 Cal.App.4th 702 ................................................................................. 10

Gerdlund v. Electronic Dispensers Int'l
  (1987) 190 Cal.App.3d 263 .................................................................................. 11

Martinez v. Master Protection
  (2004) 118 Cal.App. 4th 107 ................................................................................ 10

Madden v. Kaiser Foundation Hospitals
(1976) 17 Cal.3d 699 .................................................................................................... 7

McManus v. COBC World Markets Corp.
(2003) 109 Cal.App.4th 76 ....................................................................................... 7, 8

Mercuro v. Superior Court
(2002) 96 Cal.App.4th 167 ....................................................................................... 8, 9

Moncharsh v. Heily & Blase
(1992) 3 Cal.4th 1 ......................................................................................................... 7

Olinick v. BMG Entertainment
(2006) 138 Cal.App.4th at 283 ..................................................................................... 5

STATUES

**Federal**

9 U.S.C.
  § 2 ................................................................................................................................. 6
  §§ 1-16 ......................................................................................................................... 5

29 USC
  §§ 621 ........................................................................................................................... 5

**State**

California Code of Civil Procedure
  § 1283.05 ...................................................................................................................... 9

Page iii - Case No. CV-08-2108 JL
Def. MPA OPT Plaintiff's MOF Dec. and Inj. Relief and Reply in Support or Def. MOF Stay

## I. INTRODUCTION

Plaintiff Rita Siglain signed a Mutual Agreement to Arbitrate at the beginning of her employment with defendant agreeing to submit employment claims such as those alleged in her Complaint to arbitration. Plaintiff now seeks an order enjoining the arbitration from continuing, arguing that the Arbitration Agreement is unenforceable for a variety of reasons. As set forth in this opposition, arbitration is a favored means of dispute resolution under both the Federal Arbitration Act and California law, including disputes involving statutory employment rights. Defendant Dominion Enterprises, a Virginia General Partnership, opposes plaintiff's motion on the following grounds:

    A.    Contrary to plaintiff's assertion, the choice of law provision contained in the Mutual Agreement to Arbitrate only applies to the Arbitration Agreement and requires that Virginia law be applied to determine the enforceability of that Agreement. The Arbitration Agreement is enforceable under Virginia law.

    B.    The Mutual Agreement to Arbitrate is also enforceable under California law:

        (1)    Plaintiff has failed to show a "high degree" of procedural unconscionablity related to the Arbitration Agreement, necessitating a significant showing of substantive unconscionability to render the Agreement unenforceable.

        (2)    The Agreement's limitation of three depositions with a safety valve permitting additional depositions on a showing of good cause complies with California law.

        (3)    Plaintiff's contention that the Arbitration Agreement was misrepresented as being "just the first step" and not a waiver of her right to trial by jury is unsupported by any evidence or California law.

        (4)    Plaintiff has failed to provide any evidentiary support for her claim that the American Arbitration Association or its arbitrators are inherently biased or that the arbitrator assigned to this case is biased.

        (5)    To the extent the provision in the Arbitration Agreement excluding claims involving restrictive covenants is unconscionable, it does not render the

Agreement permeated with unconscionability and can be easily severed.

## II. FACTUAL BACKGROUND

Plaintiff Rita Siglain began working for Best Image Marketing in January 2001. On or about May 16, 2005, Trader Publishing Company acquired the assets of Best Image. In conjunction with this acquisition, Trader offered to hire Best Image's employees. On May 17, Trader conducted orientation sessions for Best Image employees to familiarize them with Trader, its policies and procedures, and to formalize the employment relationship.

Trader's Chief Financial Officer, Norman Hoffmann, Executive Vice President of Human Resources, Sunny Sonner, Vice President, Rick Murchake, Dirctor of Benefits, Constance Johnson, and Benefits Manager, Tammy Josephson traveled from Norfolk, Virginia to Lake County, California to welcome the new employees and assist with orientation. Best Image employees were split into two groups of approximately 30 employees each. One group went through the orientation in the morning and the other in the afternoon. Both orientation sessions lasted approximately four hours.

At the beginning of the orientation, Ms. Sonner provided the Best Image employees with an overview of Trader Publishing and an introduction to Human Resources. Constance Johnson then provided an extensive review of Trader's policies and procedures and benefits. After Ms. Johnson covered the policies and procedures, new hire packets were distributed, and Ms. Johnson reviewed each of the forms included in the packets. The orientation was accompanied by a Power Point presentation which bullet-pointed the significant points of each topic. (Johnson Decl., Exh.1.)

Trader Publishing requires all employees to sign a Mutual Agreement to Arbitrate. The documents in the new hire packets provided to the Best Image employees included a Mutual Agreement to Arbitrate, a pamphlet from the American Arbitration Association ("AAA") on its National Rules for the Resolution of Employment Disputes, two pages of "Questions and Answers" regarding Trader's arbitration process, and Trader's Employee Guidebook which also included information on the company's arbitration policy. (See Johnson Decl., Exhs. 2- 5). During the orientation, Ms. Johnson discussed the Arbitration Agreement twice: Once during her

discussion of company policies and procedures and again after the new hire packets had been handed out, when the employees had the Arbitration Agreement in front of them. (Johnson Decl., Exh. 1, Slides 51 & 123.) Employees were specifically told that in agreeing to arbitration, they were waiving their right to a jury trial.

Employees were encouraged to sign the employment documents on the day of the orientation. In order to transition the employees timely to Trader's payroll system and benefits programs, Trader needed to input the their data into Trader's system by Friday, May 20. Employees were told that they could take the documents with them and have them reviewed by anyone they wanted, including counsel, but were asked to return the signed documents by the time the Trader orientation group left on May 18. Employees were also told that the Trader group would be available again on May 18 to answer any additional questions.

As part of the acquisition, Best Image's owner requested that certain employees be paid "loyalty bonuses," and provided Trader with the funds for payment of the bonuses. Employees who received these bonuses met separately with Best Image's owner following the orientation sessions. Plaintiff was one of the Best Image employees selected to receive a bonus and received $13,814. (Young Decl., Exh. A (Siglain Decl.), and Exh. A thereto.)

Plaintiff signed her Arbitration Agreement on September 17, 2005. To defendant's knowledge, she did not ask any questions about the Agreement, have anyone else review it, or express any qualms before she signed.

On or about September 10, 2006, Trader changed its name to Dominion Enterprises. Plaintiff remained an employee of defendant Dominion until her employment was terminated on July 9, 2007. Plaintiff's position was eliminated due to the fact that the product she was working on was not profitable. At the time this decision was made, plaintiff had been on medical leave since March 2007, she had exhausted her leave entitlement under the Family Medical Leave Act and California Family Rights Act, and according to plaintiff's doctor she was not able to return to work until December 2007 at the earliest.

### III. PROCEDURAL BACKGROUND

Plaintiff filed her complaint in Lake County Superior Court on or about February 5, 2008.

On April 23, 2008, defendant removed the action to this court on diversity and federal question grounds. Defendant also initiated arbitration with the American Arbitration Association "AAA") pursuant to the terms of the Mutual Agreement to Arbitrate and filed a motion to stay this action pending the completion of arbitration.

The parties have gone through the AAA process to select an arbitrator and AAA has appointed Rebecca Eisen as arbitrator, subject to confirming she has no conflict of interest.[1] It is defendant's understanding that both parties have communicated to AAA that they do not believe Ms. Eisen has a conflict of interest in serving in this matter as an arbitrator.

## IV.    ARGUMENT

As a preliminary matter, the court must determine what law should be applied in determining whether the Mutual Agreement to Arbitrate is enforceable. The Agreement contained a choice of law provision specifying that it was to be interpreted in accordance with Virginia law. As set forth below, this provision is valid and the Agreement is enforceable under Virginia law. However, even if California law is applied, the Agreement is enforceable under the standards set forth in <u>Armendariz v. Foundation Healthcare Psych Services</u> ((2000) 24 Cal.4th 83) and subsequent decisions.

### A.    <u>The Arbitration Agreement Must Be Interpreted In Accordance With Virginia Law</u>

In arguing that the Mutual Agreement to Arbitrate is unconscionable, plaintiff erroneously argues that the choice of law provision in the Agreement requires that plaintiff's substantive claims be determined in accordance with Virginia law. The language of the Agreement makes it clear that the choice of law provision <u>only</u> applies to the Mutual Agreement to Arbitrate:

> "7.    **Applicable Law**. This Arbitration Agreement is to be governed by and construed in accordance with the laws of the Commonwealth of Virginia." (Young Decl., Exh. A (Siglain Decl.) & Exh. A thereto, p. 2.)[2]

---

[1] Ms. Eisen is a partner with the law firm of Morgan Lewis & Bockius and specializes in employment law. When Ms. Eisen ran a conflicts check, she apparently determined that one of the East coast offices for her firm was representing a party in a position potentially adverse to Dominion.

[2] Plaintiff has submitted a copy of the Mutual Agreement to Arbitrate with her moving papers as Exhibit A to the Declaration of Rita Siglain, which is Exhibit A to the Declaration of Eric Young. This copy of the Agreement, minus plaintiff's and defendant's signatures, is identical to the copy of the unsigned Agreement attached to the Declaration of Constance Johnson as Exhibit 2.

Page 4 - Case No. CV-08-2108 JL
Def. MPA OPT Plaintiff's MOF Dec. and Inj. Relief and Reply in Support or Def. MOF Stay

Unlike the case cited by plaintiff, <u>Olinick v. BMG Entertainment</u>, there is no written employment agreement between plaintiff and defendant which specifies that it is to be interpreted in accordance with Virginia law. ((2006) 138 Cal.App.4th 1286, 1290.) Thus, plaintiff's substantive claims will be determined in accordance with California law.[3]

Plaintiff has not argued that requiring the application of Virginia law to interpret the Mutual Agreement to Arbitrate renders the entire Agreement unenforceable. Nor can she make this argument. Under the <u>Olinick</u> case, California law does not preclude even a choice of law provision which dictates what law is used to determine the substantive rights of employees. (<u>Olinick</u>, <u>supra</u>, 138 Cal.App.4th at 283 (citing <u>Armendariz</u>, <u>supra</u>, 24 Cal.4th 83, 90).) Even in the context of an employment agreement, under <u>Armendariz</u>, "[a]n employer and an employee may validly agree to select a forum other than California, and may validly select the substantive law of another jurisdiction, *provided* the employee has an adequate remedy for his or her discrimination claim …" (<u>Ibid</u>.)

As noted above, plaintiff has an adequate remedy for her discrimination claims because they will be determined in accordance with California law. Nor does the application of Virginia law to the Arbitration Agreement impact the adequacy of her remedy. The Commonwealth of Virginia largely looks to the Federal Arbitration Act to evaluate the enforceability of arbitration provisions in the context of statutory employment claims. (<u>See</u>, <u>e.g.</u>, <u>Hooters of America v. Phillips</u>, 173 F.3d 933 (4th Cir. 1999); <u>O'Neil v. Hilton Head Hospital</u>, 115 F.3d 272 (4th Cir. 1997).) ). "In the FAA, 9 U.S.C. §§ 1-16, Congress endorsed arbitration as a less formal and more efficient means of resolving disputes than litigation." (<u>Hightower v. GMRI, Inc.</u>, 272 F.3d 239, 241 (4th Cir. 2001).) "In line with this congressional intent, the Supreme Court has repeatedly emphasized that the FAA represents 'a liberal federal policy favoring arbitration agreements.'" (<u>O'Neil</u>, <u>supra</u>, 115 F.3d at 273 (quoting <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 24 (1983)).) "Pursuant to that liberal policy, 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay,

---

[3] The one exception is plaintiff's Age Discrimination claim brought under 29 USC §§ 621 *et seq.*

Page 5 - Case No. CV-08-2108 JL
Def. MPA OPT Plaintiff's MOF Dec. and Inj. Relief and Reply in Support or Def. MOF Stay

or a like defense to arbitration.'" (Id. at 273-274 (quoting Moses H. Cone Memorial Hospital, supra, 460 U.S. at 24-25).) "By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial forum." (Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).)

As under California law, under the FAA, arbitration agreements will not be enforced if they do not comply with state contract law: Written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. For example, arbitration agreements that permit an employer to ignore the result of the arbitration will not be enforced. (O'Neil, supra, 115 F.3d at 275.) Similarly, where an employer promulgates rules so egregiously unfair as to constitute a default of its contractual obligation, the arbitration agreement will be rescinded. (Hooters, supra, 173 F.3d at 938-940.)[4]

Thus, under Virginia law, the standards used to determine the enforceability of an arbitration agreement in the context of statutory employment rights, while not identical to those set forth in Armendariz, include similar contractual defenses designed to ensure that basic standards of fairness are satisfied. In this case, the Arbitration Agreement is enforceable under the FAA and Virginia law. There are no provisions in the Agreement which, for example, allow defendant to ignore the result of the arbitration such as in O'Neil, supra. Nor has defendant promulgated one-sided rules which effectively eviscerate the employee's right to a fair arbitration as in Hooters, supra.

### B.  The Mutual Agreement to Arbitrate Is Enforceable Under California Law

Even if the enforceability of the Mutual Agreement to Arbitrate is determined in accordance with California law, it meets the requirements of Armendariz and subsequent cases. Like their federal counterparts, California courts have repeatedly articulated a strong public policy

---

[4] In Hooters, the employer's rules specified, among other things, that the employee to file a written claim but the employer was not required to file a written response, the employee was required to provide a list of fact witnesses with a summary of their testimony and the employer did not have any reciprocal obligation, the employer exclusively selected the list of arbitrators, and that the employer was entitled to move for summary dismissal of the claims but the employee could not seek summary judgment. (173 F.3d at 938-939.)

1  favoring resolution of employment and other commercial disputes by means of arbitration. (<u>Doers
2  v. Golden Gate Bridge etc. District</u> (1979) 23 Cal.3d 180, 189; <u>Christensen v. Dewer
3  Developments</u> (1983) 33 Cal.3d 778, 782.) California courts have also lauded the benefits of
4  arbitration. (<u>See, e.g., Moncharsh v. Heily & Blase</u> (1992) 3 Cal.4th 1, 9 [California has a "strong
5  public policy in favor or arbitration as a speedy and relatively inexpensive means of dispute
6  resolution"]; and <u>Madden v. Kaiser Foundation Hospitals</u> (1976) 17 Cal.3d 699, 706-7
7  [California's statutory scheme "evidence[s] a strong public policy in favor of arbitrations. . . [as a]
8  favored method of resolving disputes"].)

9  Under California law, in a case involving statutory employment rights, an arbitration
10 agreement must meet five minimum standards in order to be enforceable: (1) It must provide for
11 neutral arbitrators, (2) provide for more than minimal discovery, (3) require a written award, (4)
12 provide for all types of relief that would otherwise be available in court, and (5) not require
13 employees to pay unreasonable costs or fees or expenses as a condition of access to the arbitration
14 forum. (<u>Armendariz</u>, <u>supra</u>, 24 Cal.4th at 102.)

15 In addition, the agreement may be unenforceable if it is sufficiently unconscionable. The
16 unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. (<u>Id.</u>
17 at 113.) If a contract is one of adhesion, then the court must determine if there are other factors
18 present which render it unenforceable. (<u>Ibid.</u>) Unconscionability has both a procedural and a
19 substantive element. (<u>Ibid.</u>) Procedural unconscionability focuses on oppression or surprise due to
20 unequal bargaining power. (<u>Id.</u> at 113.) Substantive unconsionability focuses on overly harsh or
21 one-sided results. (<u>Ibid.</u>)

22 Both procedural and substantive unconscionability need to be present in order for a court to
23 find an arbitration provision unenforceable. (<u>Ibid.</u>) However, these elements need not be present
24 to the same degree. Rather, a sliding scale is applied such that the greater the evidence of
25 substantive unconscionability, the less evidence is needed of procedural unconscionability, and
26 vice versa. (<u>Ibid.</u>; <u>McManus v. COBC World Markets Corp.</u> (2003) 109 Cal.App.4th 76, 91.)

27 In this case, there is no dispute that plaintiff was required to sign the Arbitration Agreement
28 as a condition of employment with Trader Publishing. However, the fact that the agreement was a

contract of adhesion does not render it unenforceable. (McManus, supra, 109 Cal.App.4th at 91.) As noted above, this is the beginning of the analysis, not the end. In this case, plaintiff cannot show sufficient procedural or substantive unconscionablity to render the agreement unenforceable.

    (1)  The Arbitration Agreement Was Not "Highly" Procedurally Unconscionable

  Plaintiff repeatedly refers to the Agreement as involving a "high degree of procedural unconscionability." However, Trader Publishing did not engage in the type of oppressive conduct that would be necessary to find a "high degree" of procedural unconscionability. Nobody was threatened or bullied into signing the agreement. (See Mercuro v. Superior Court (2002) 96 Cal.App.4th 167, 175.) At the time of Trader's acquisition of Best Image's assets, Trader offered employment to all existing Best Image employees. A group of Trader employees traveled from Virginia to Lake County to welcome these employees to Trader and acquaint them with Trader's policies and procedures. Trader offered benefits that were not offered by Best Image. For example, as former employee Ann Christensen acknowledged in her declaration, Trader had a 401k plan for its employees and Best Image did not.

  On May 17, 2005, Trader's representatives spent over four hours with Best Image employees reviewing policies and procedures, including Trader's arbitration program. Contrary to the Declarations of plaintiff and Ms. Christensen, employees were not required to sign the documents that day. (Sonner Decl., ¶ 7; Johnson Decl., ¶ 10 & Exh. 1 thereto, slides 117-118.[5]) Employees were encouraged to sign that day and were told that they needed to return the signed documents by the time the Trader group left on May 18, but this was to ensure that the information could be processed so that the Best Image employees received pay checks timely and there was a smooth transition in benefits such as health insurance coverage. Best Image employees were specifically told they could take the documents with them and have them reviewed by whomever the wished. (Sonner Decl., ¶ 7; Johnson Decl., ¶ 10.) In addition to May 17, Trader representatives were available the next day to respond to any additional questions. (Sonner Decl., ¶ 8; Johnson Decl., ¶ 11.)

---

[5] Slide 118 states "Be sure to complete and return your enrollment form(s) May 18, 2005." This was the day after the orientation sessions.

Page 8 - Case No. CV-08-2108 JL
Def. MPA OPT Plaintiff's MOF Dec. and Inj. Relief and Reply in Support or Def. MOF Stay

Plaintiff complains about the orientation being "fast-paced and hectic." However, that is no different than what most employees experience their first day on a new job. Nor is it unusual for an employee to be given multiple documents to sign on his or her first day. Plaintiff's Declaration does not state that she had any qualms about signing the Mutual Agreement to Arbitrate, asked any questions about it, asked if she could take any of the documents home to review (and was denied), asked if she could discuss them with her husband or an attorney before signing, or that she felt oppressed in any way in signing the documents.

(2) The Limitation on Depositions Do Not Violate Armendariz

On the topic of discovery, the Mutual Agreement to Arbitrate provides:

> "The Federal Rules of Evidence and the Federal Rules of Civil Procedure shall apply, except that each party shall be limited to no more than three (3) depositions unless the arbitrator, upon application by the Company or you and upon a showing of good cause, authorizes the taking of additional depositions." (Johnson Decl., Exh. 2, ¶ 2.)

This provision complies with California law. Armendariz held that employees must be entitled to "discovery sufficient to adequately arbitrate their statutory claims, including access to essential documents and witnesses, as determined by the arbitrator(s) and subject to limited judicial review pursuant to Code of Civil Procedure section 1286.2." (24 Cal.4th at 106.) Armendariz also acknowledged that discovery limitations are an integral and permissible part of the arbitration process. (Id. at 106 n. 11.) "Adequate" discovery does not mean "unfettered" discovery. (Mercuro v. Superior Court, supra, 96 Cal.App.4th at 184.) Armendariz specifically recognized that parties may agree to something less than the full panoply of discovery permitted under the California Arbitration Act. (24 Cal.4th at 105-106 [referencing CCP § 1283.05].)

In Mercuro, the court found that discovery limitations similar but more extensive than in the Trader Agreement provided adequate discovery. The agreement in Mercuro contained provisions stating: "...each side shall be limited to three depositions and an aggregate of 30 discovery requests of any kind, including sub-parts, except as mutually agreed to by the parties" and "[a] deposition of a corporate representative shall be limited to no more than four designated subjects." (96 Cal.App.4th at 182.) The Mercuro agreement also provided: "[any] disputes

1  concerning discovery shall be resolved by the arbitrator, with a presumption against increasing the
2  aggregate limit on requests, additional discovery requests shall be granted only upon a showing of
3  good cause." (Ibid.) The court concluded that this provision did not prevent the plaintiff from
4  vindicating his statutory rights. (Id. at 183.) The limitations were mutual, they could work to the
5  employee's advantage by preventing the employer from burying him under a mountain of
6  discovery, and the discovery limits could be extended by the arbitrator for good cause. (Ibid.)

7  In Martinez v. Master Protection, the court held that an agreement permitting one
8  deposition and a document request did not as a matter of law fail to afford adequate discovery as
9  required by Armendariz. ((2004) 118 Cal.App.4th 107, 118-119.)

10  Plaintiff cites Fitz v. NCR Corp. ((2004) 118 Cal.App.4th 702, 715-716) as the primary
11  authority for her argument that the discovery limitations in the Trader Agreement render it
12  unenforceable. However, in Fitz, a significant factor in the court's determination that the discovery
13  limitations failed to satisfy Armendariz was that the agreement in question failed to provide an
14  adequate "safety valve" in the event additional discovery was needed.

> In Fitz, the policy provided:
> "To prepare for the arbitration hearing, both NCR and the employee have the right to take the sworn deposition statements of two individuals and, in addition, any expert witnesses expected to testify at the hearing. All documents to be used as exhibits and a list of all potential witnesses will be exchanged at least two weeks in advance of the hearing. No other 'discovery' (i.e., depositions or demands for documents/information) will be permitted unless the arbitrator finds a compelling need to allow it. In determining whether a compelling need exists, the arbitrator will balance the interests of fairness and expediency; the arbitrator will only override the goal of achieving a prompt and inexpensive resolution to the dispute if a fair hearing is impossible without additional discovery." (Id. at 709.)

21  This was an "inadequate safety valve" because the arbitrator was constrained by an
22  "impossibility" standard. (Id. at 717.)

23  The discovery provision in the Trader Agreement permits discovery in excess of that which
24  was found acceptable in Mercuro. The provision places no limits on any form of written discovery
25  but limits the parties to three depositions apiece. The Trader provision also includes a safety valve
26  permitting the arbitrator to authorize additional depositions on a showing of "good cause."
27  Mercuro specifically found a provision permitting additional discovery on a showing of "good
28  cause" to be permissible. (96 Cal.App.4th at 183.)

(3)  **Plaintiff's "Misrepresentation" Argument is Specious**

Plaintiff contends that the Mutual Agreement to Arbitrate was misrepresented as being "just a first step" in the event of an employment dispute. This contention is not supported by the documents or other evidence. The Agreement makes it clear in multiple locations that arbitration is binding and replaces a jury trial. For example in Paragraph 1 the Agreement states:

> "Except as otherwise provided in this Agreement, you and the Company agree to settle by final and binding arbitration any and all claims and controversies … arising out of your employment … ." (Johnson Decl., Exh. 2, ¶ 1.)

The "Employee's Acceptance" provides:

> "I understand and acknowledge that by signing this Arbitration Agreement, the Company and I are giving up the right to jury trial and to a trial in a court of law with respect to any arbitrable claim either of us may have against the other." (Johnson Decl., Exh. 2, p. 2.)

The Agreement also contains an integration provision. (Johnson Decl., Exh. 2, ¶ 8.) Thus, the parol evidence rule prohibits the consideration of extrinsic evidence to vary or contradict the written instrument. (Gerdlund v. Electronic Dispensers Int'l (1987) 190 Cal.App.3d 263, 270.)

The Power Point slide used during the discussion on Trader's arbitration agreement stated: "Agreement says you agree to have your concerns heard by an arbitrator rather than judge/jury." (Johnson Dec., Exh. 1, Slide 51.) The "Questions and Answers" provided to all Best Image employees responded to the question "What is the difference between Arbitration and a court trial?" by stating, in part: "With Arbitration, the decision is final. There is no right to a jury trial after the Arbitration. …" (Johnson Decl., Exh. 4.) This was also covered in the Employee Guidebook. (Johnson Decl., Exh. 5.)

It should also be noted that the Declaration of Ann Christensen does not corroborate plaintiff's claim that the Arbitration Agreement was "described by TRADER's representatives as just a first step, should we ever have any disputes about our employment" or that none of the representatives described the Agreement as "'binding' or that we were waiving our right to a jury trial." (Young Decl., Exh. A, ¶ 6 (Siglain Decl.) and Exh. B (Christensen Decl.).)

To the extent plaintiff is arguing that the Arbitration Agreement is not binding on her from

a contractual standpoint, this claim is without merit. As noted above, the Agreement was an integrated document on the topic of arbitration. To the extent plaintiff is suggesting she did not know what she was signing, this does not affect the validity of the Agreement. Plaintiff had the obligation to have any concerns she had addressed before she signed. (Gold v. Deutsche Aktiengeselschaft, 365 F.3d 144, 149 (2nd Cir. 2004.) To the extent plaintiff is suggesting that she was fraudulently induced to sign the Agreement, even her witness does not support her on this claim. Nor can she establish that she reasonably relied any such misrepresentations given the clear language in the documents Trader provided to her advising that she was giving up her right to jury trial.

        (4)    Plaintiff Has Failed to Establish that the AAA Or Assigned Arbitrator is Not Neutral

Plaintiff argues that the Arbitration Agreement does not provide for a neutral arbitrator because it specifies the American Arbitration Association as the arbitration provider and "AAA has taken a highly public position against trial attorneys and, in particular, members of the San Francisco Trial Lawyers Association." In making this argument, plaintiff's counsel dredges up a six year old brouhaha involving opinions expressed by the President of the American Arbitration Association on pending legislation affecting arbitration which the San Francisco Trial Lawyers Association took exception to. The opinions expressed by this one individual are in no way reflective of whether the arbitrators admitted to the AAA's roster are neutral. AAA is a nonprofit, public service organization dedicated to the resolution of disputes through alternative dispute resolution proceedings. (Hartley Decl., Exh. 2.) AAA has well established rules concerning qualifications for arbitrators which require neutrality. (Hartley Decl., Exh. 1.) The organization also has rules governing the selection process, disclosure requirements for arbitrators, and disqualification to ensure that only neutral arbitrators hear cases. (See Hartley Decl., Exh. 2, Rules 12, 15-17.) There is nothing inherently biased about the AAA. Nor has plaintiff cited any case law supporting her argument.

There is also nothing about this specific case that results in the use of the AAA resulting in a biased arbitrator. Defendant has never arbitrated a case with AAA in California and cannot be

viewed as a "repeat player" by any stretch of the imagination. (Sonner Decl., ¶ 10.) Furthermore, plaintiff's counsel has informed the AAA that he does not have any dispute with the parties' assigned arbitrator, Rebecca Eisen. (Hartley Decl., Exh. 3.)

      (5)    <u>To the Extent the Exclusion of Claims For Restrictive Covenants is Unconscionable the Provision Can be Severed</u>

Plaintiff contends that the Arbitration Agreement lacks mutuality because under the Agreement With Restrictive Covenants, "defendant remains fully able to access courts to redress claims that its employees solicited its clients, disclosed trade secrets, or otherwise improperly used the company's proprietary materials." In support of this assertion, plaintiff cites paragraph VII of the Agreement with Restrictive Covenants which provides that defendant is entitled to injunctive relief in the event of plaintiff breaching certain obligations under the Agreement with Restrictive Covenants. (Young Decl., Exh. A (Siglain Decl.), & Exh. A thereto.) Although not discussed by plaintiff, the Mutual Agreement to Arbitrate defines "Claims Not Covered" as including "claims concerning restrictive covenants, confidentiality agreements or trade secrets. (Johnson Decl., Exh. 2, ¶ 3(e).) The Agreement With Restrictive Covenants is a separate agreement from the Mutual Agreement to Arbitrate and is not at issue in this case. The fact that the Agreement With Restrictive Covenants states that the loyalty bonus is being paid as consideration for plaintiff signing both that agreement and the Arbitration Agreement does not, as plaintiff contends, result in the Agreement with Restrictive Covenants "expressly incorporating" the Arbitration Agreement.

In <u>Armendariz</u>, the court found that an arbitration agreement which only applied to employee claims lacked mutuality and was unconscionably one-sided. (24 Cal.4th at 120.) In <u>Mercuro</u>, the court extended this holding to a provision excluding claims for injunctive or equitable relief for intellectual property and similar claims, although equally applicable to both parties. (96 Cal.App.4th at 175-177.) The basis for this holding was the court's supposition that the provision exempted those claims an employer was most likely to bring against its employees. (<u>Id</u>. at 176.)

The Arbitration Agreement in this action contains a provision similar to that in <u>Mercuro</u>.

To the extent this provision is impermissible, it can easily be severed, and the Arbitration Agreement enforced without it.

Unconscionable provisions may be severed from an arbitration agreement allowing the remainder of the agreement to be enforced so long as the entire agreement is not "permeated" with unconscionability. (Armendariz, supra, at 121-122.) The court has the discretion to strike any single clause or group of clauses which are unconscionable. (Id. at 122.) In this case, the Agreement in question is in no way "permeated" with unconscionability. The only provision which is even arguably substantively unconscionable is that excluding claims concerning restrictive covenants. This provision is a far cry from that in Armendariz which specifically only required employees' claims to be arbitrated. In all other respects, this Agreement tracks the requirements of Armendariz and its progeny in terms of cost allocation, not limiting employees' remedies, permitting adequate discovery, providing for a neutral arbitrator, and in applying to both parties equally.

Furthermore, unlike Armendariz and other cases, the one potentially unconscionable provision is contained in a separate and distinct subsection (Mutual Agreement, ¶ 3(e)) and can easily be severed without requiring any rewriting of the Agreement. (Id. at 124-125; See also Mercuro at 184-185.)

## V.     CONCLUSION

For the foregoing reasons, defendant Dominion Enterprises respectfully requests that the court deny plaintiff's motion for injunctive relief enjoining the arbitration from going forward and grant defendant's motion to stay the action pending the outcome of arbitration.

Respectfully submitted,

Dated: June 11, 2008
DILLINGHAM & MURPHY, LLP
CARLA J. HARTLEY
WILLIAM P. WILSON

By: /s/
Attorneys for Defendant DOMINION ENTERPRISES