ERIC G. YOUNG, ESQ. (SBN 190104)
LAW OFFICES OF ERIC G. YOUNG
The Courtyard
141 Stony Circle, Suite 202
Santa Rosa, CA 95401
Telephone: 707.575.5005
Facsimile: 707.575.5395
Email: eyounglaw@hotmail.com,
ericgyoung@gmail.com

Attorneys for Plaintiff
RITA SIGLAIN

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| RITA SIGLAIN,<br><br>          Plaintiff,<br><br>v.<br><br>TRADER PUBLISHING COMPANY, a Virginia Partnership; DOMINION ENTERPRISES, INC., a Virginia corporation; LANDMARK COMMUNICATIONS, INC., a Virginia corporation; BEST IMAGE MARKETING, INC., a California corporation,<br><br>          Defendants. | Case No. CV-08-2108 JL<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR DECLARATORY AND INJUNCTIVE RELIEF ENJOINING ARBITRATION**<br><br>Date: July 2, 2008<br>Time: 9:30 a.m.<br>Courtroom:   F<br>Judge: The Honorable James Larson,<br>             Magistrate Judge |

COMES NOW, Plaintiff RITA SIGLAIN and submits to the Court this Reply Memorandum of Points and Authorities in Support of Motion for Declaratory and Injunctive Relief Enjoining Arbitration:

///

///

///

## I. LEGAL ARGUMENT

### A. Defendants Cannot Avoid The Fact That the Arbitration Agreement Requires The Application Of Virginia Law To This Dispute

In its Opposition, Defendant concedes that the Arbitration Agreement itself must be interpreted in accordance with Virginia law; however, Defendant argues that the terms of the Arbitration Agreement do *not* require the application of Virginia law to Plaintiff's substantive claims. (*See,* Opposition, page 4, line 16 - page 5, line 4.) Defendant's reading of the Arbitration Agreement is directly at odds with the plain meaning of the Agreement, which they cannot now re-write in their legal argument to avoid its unconscionable effect. (*Martinez v. Master Protection,* 118 Cal.App.4th 107, 116 (2004) ["No existing rule of contract law permits a party to resuscitate a legally defective contract merely by offering to change it."] (Citations omitted.) Defendant's reading is also at odds with the maxim that contracts must be interpreted as a whole.

Paragraph 2 of the Arbitration Agreement states, in pertinent part:

> "2.  **Arbitration Procedures**. Arbitration shall be conducted in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") in effect at the time an Arbitrable Claim is made...The arbitrator shall apply the *applicable substantive law*, law of remedies, and the law regarding the allocation of the burden of proof..."

Paragraph 7, the "choice of law" provision at issue, states:

> "7.  *Applicable Law*. This Arbitration Agreement is to be governed by and construed in accordance with the laws of the Commonwealth of Virginia."

(Emphasis added.)

Both of these provisions utilize the phrase "applicable law." Defendant attempts to read the terms of Paragraph 7 in a vacuum separate and apart from the parties' entire agreement. This reading violates the maxim that contractual terms must be interpreted as a whole. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Company,* 107 Cal.App.4th 516, 526) (Citations omitted.) When paragraphs 2 and 7 are read together as a whole, it clear that the arbitrator is required to

Reply Memorandum in
Support of Motion for
Declaratory and Injunctive Relief

2

apply the law of the Commonwealth of Virginia, not the law of the California, to Plaintiff's claims.

The maxim that contracts must be interpreted as a whole also requires this Court to review the Agreement With Restrictive Covenants to ascertain what the parties intended. (*R.J. Reynolds Tobacco Company, supra,* 107 Cal.App.4th at 525-526; *See,* Young Declaration, Exhibit "A," Declaration of Plaintiff Rita Siglain and its Exhibit "A.") The Arbitration Agreement is incorporated into the Agreement With Restrictive Covenants at page 1, second paragraph, of the Agreement With Restrictive Covenants. Like the Arbitration Agreement, the Agreement With Restrictive Covenants contains a "choice of law" provision, which states:

> "IX.   GOVERNING LAW AND JURISDICTION
>
> This Agreement will be governed by, construed, interpreted, and its validity determined, *under the law of the State in which I last worked for Trader*. I hereby irrevocably and unconditionally submit to the nonexclusive jurisdiction of the United States District Court or State Court which has original jurisdiction for *the judicial district or county in which I last worked for Trader*, and any appellate court from these courts, in any action or proceeding arising out of or relating to this Agreement."

(Emphasis added.)

Unlike the "choice of law" provision in the Arbitration Agreement, however, the companion "choice of law" provision in the Agreement With Restrictive Covenants *unmistakably* chooses California law to govern those disputes for which Defendant reserved its right to go to court. Viewing the parties' overall agreements with an eye to ascertaining what Defendant intended when it drafted this language, it is reasonable to conclude that Defendant intended the law of the Commonwealth of Virginia to be the "applicable law" for the Arbitration Agreement. Had it not so intended, Defendant could just as easily have written the same, clear, unmistakable "choice of law" provision into the Arbitration Agreement. It did not.

For the reasons set forth in Plaintiff's moving papers, the "choice of law" provision in the Arbitration Agreement should be declared void as against public policy. This "choice of law"

Reply Memorandum in
Support of Motion for
Declaratory and Injunctive Relief                                3

provision supplants California's stricter laws protecting disabled workers and replaces it with a forum that has shockingly weak laws protecting disabled workers.

Moreover, the presence of the "choice of law" provision in the Arbitration Agreement should be taken into account as yet another example of the ways in which this Arbitration Agreement is "permeated with unconscionability." (*Armendariz v. Found. Health Psychcare Servs.*, 24 Cal.4th 83, 122 (2000).)

**B.    Defendant's Opposition Fails Entirely To Address Significant Similarities Between The Discovery Limitations In This Case And Those Held To Be Unconscionable In The *Fitz* Case**

In its Opposition, Defendants attempt to distinguish the *Fitz* case from the instant case *solely* on the grounds that the arbitrator in the *Fitz* case was limited to an "impossibility standard" in determining whether to grant more discovery than was allowed in the parties' arbitration agreement. (*See,* Opposition, page 10, lines 21-22.) While it is true that this was <u>one</u> important factor considered by the *Fitz* Court, the Court also looked to the underlying rules of arbitration that applied in *Armendariz* versus its case. As the Court noted, the parties in *Armendariz* agreed to the rules of the California Arbitration Act, which granted essentially the same rights, remedies and procedures as California's Discovery Act. (*Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 718 (2004).) By contrast, the litigants in *Fitz* – just like here – agreed to the rules of the AAA, with further limiting language by the employer.

As Plaintiff noted in her moving papers, the significance of this point is that the rules of the AAA – unlike the CAA – are designed to balance the need for discovery against the expedited nature of arbitration. (*Fitz, supra,* 118 Cal.App.4th at 718, fn. 3.) Therefore, even if the Arbitration Agreement permits the arbitrator to allow additional discovery, as Defendants contend, that arbitrator will be constrained by rules that are, by their very nature, designed to limit discovery rather than permit it. This places the Plaintiff at a severe disadvantage "because the employer already has in its possession many of the documents relevant to an employment

Reply Memorandum in
Support of Motion for
Declaratory and Injunctive Relief

4