1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                        NORTHERN DISTRICT OF CALIFORNIA

10

11  Rita Siglain,                                    No. C 08-2108 JL

12              Plaintiff,
                                                     **ORDER STAYING CASE PENDING**
13       v.                                          **ARBITRATION (Granting Docket # 4,**
                                                     **denying # 14)**
14  Trader Publishing Company,

15              Defendant.
    _____/

16                                          **Introduction**

17
            This Court has jurisdiction in this case pursuant to 28 U.S.C. §1332 (diversity of
18
    citizenship). All parties consented to the magistrate judge's jurisdiction pursuant to 28
19
    U.S.C. § 636(c) and Civil Local Rule 73.
20
            Plaintiff's motion for declaratory and injunctive relief enjoining arbitration, and
21
    Defendant's motion for stay of case pending arbitration (Docket #s 14 and 4) came on for
22
    hearing. Eric G. Young, LAW OFFICES OF ERIC G. YOUNG, Santa Rosa, California,
23
    appeared for Plaintiff Rita Siglain. Carla J. Hartley, DILLINGHAM & MURPHY, LLP,
24
    appeared for Defendant. The Court considered the moving and opposing papers and the
25
    arguments of counsel and hereby denies the motion to enjoin arbitration and grants the
26
    motion for stay.
27

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SUMMARY**

Plaintiff is laboring under a couple of misconceptions:

1.    She wants the Court to enjoin enforcement of the Arbitration Agreement because she says it means that the arbitrator will evaluate her claim for employment discrimination due to her disability according to the law of Virginia. She doesn't want that. The reason is that Virginia uses the more restrictive standard of the ADA, where a plaintiff has to prove that her disability "substantially limits" one or more major life activities, while the disability law of California only requires that she prove that her disability "limits" one or more major life activity.

Plaintiff is mistaken. The arbitrator will evaluate her disability discrimination claim according to the law of California. So her concern is baseless.

2.    Plaintiff asks the Court to enjoin the Arbitration Agreement also on the grounds that it is procedurally and substantively unconscionable, and therefore unenforceable, under California law. She says she was given no choice - - she had to sign in order to continue her employment.  This is true. However, procedural unconscionability alone is not enough to render the Agreement unenforceable. She objects also on the ground of substantive unconscionability because the Arbitration Agreement limits the amount of discovery both sides can take, and also limits the types of claims subject to arbitration to those that an employee rather than an employer is more likely to make. Plaintiff is again mistaken on both counts. The discovery limitation is appropriate under California law; the point of arbitration is to facilitate an early decision, after limited discovery, and these goals are concomitant with California case law. The types of claims subject to arbitration rather than judicial resolution are not unfair to Plaintiff, also according to California law. If this provision is unconscionable, it may be severed. Plaintiff contends this is impossible. Not so.

**United States District Court**
For the Northern District of California

1

**Background**

2      Plaintiff Rita Siglain was a senior editor for a publishing company, Best Image

3  Marketing, in Lake County. Best Image was bought by Trader Publishing, later re-named

4  Dominion Enterprises. About a year before the acquisition, Plaintiff began having problems

5  with her back and neck, due to a pinched nerve in her spine. She cannot sit at a computer

6  for extended periods without severe pain. She needs to take frequent breaks and not

7  overwork. She says that, had she known that her agreement to arbitrate any complaints

8  related to her employment was absolute and final, she would have hesitated to sign it. She

9  says that she was not given the option to take the agreement home and she was not given

10  the option to consult with an attorney or other advisor before she signed it. (Siglain Decl.,

11  Ex. A to Plaintiff's motion at ¶ 5.)  She was terminated from her employment and filed suit

12  in Lake County Superior Court for employment discrimination based on her disability

13  (pinched nerve in her spine) and Defendants removed the case to this Court, on the basis

14  of diversity of citizenship and federal question. The defendant corporation, Dominion

15  Enterprises, is a citizen of the Commonwealth of Virginia. All parties consented to this

16  Court's jurisdiction. She now wants to be released from the restrictions of the Arbitration

17  Agreement she signed before she started work.

18      In particular, she wants to be relieved of the limit of three depositions, with a safety

19  valve to obtain more, on a showing of good cause. She claims this is an unconscionable

20  limitation on her, since the employer has most if not all the information she needs to make

21  her case for discrimination.  She attempts to show that the Arbitration Agreement should be

22  interpreted according to the laws of California, much more favorable toward disabled

23  employees, and not according to the laws of Virginia, as stated in the Arbitration

24  Agreement. She contends that Virginia law unfairly discriminates against disabled

25  employees.

26

27

28

**United States District Court**
For the Northern District of California

1

**ARGUMENT**

2 **Does the choice of law provision in the Mutual Agreement to Arbitrate apply only to**

3 **the Arbitration Agreement?**

4      Plaintiff erroneously argues that the choice of law provision in the Agreement

5 requires that Plaintiff's substantive claims be determined in accordance with Virginia law.

6 The language of the Agreement makes it clear that the choice of law provision only applies

7 to the Mutual Agreement to Arbitrate:

8      Applicable Law.  This Arbitration Agreement is to be governed by and construed in

9      accordance with the laws of the Commonwealth of Virginia."  (Young Decl., Exh. A

10      (Siglain Decl.) & Exh. A thereto, p. 2.)[1]

11      Plaintiff, also cites *Olinick v. BMG Entertainment*, but here there is no written

12 employment agreement between Plaintiff and Defendant which specifies that her claim is to

13 be interpreted in accordance with Virginia law.  138 Cal.App.4th 1286, 1290 (2006).

14 Defendant concedes that Plaintiff's substantive claims will be determined in accordance

15 with California law. The Agreement with Restrictive Covenants, which certainly reads like

16 an employment agreement, and which specifies that it is subject to the substantive law of

17 whatever jurisdiction Plaintiff last worked in, which is California.

18      Defendant argues that the choice of law provision contained in the Mutual

19 Agreement to Arbitrate only applies to the Arbitration Agreement and requires that Virginia

20 law be applied to determine the enforceability of that Agreement and that the Arbitration

21 Agreement is enforceable under Virginia law.

22      Defendant argues in addition that the Mutual Agreement to Arbitrate is also

23 enforceable under California law, and cites a number of California cases for that

24 proposition.

25

26      [1] Plaintiff has submitted a copy of the Mutual Agreement to Arbitrate with her moving
27 papers as Exhibit A to the Declaration of Rita Siglain, which is Exhibit A to the Declaration of
Eric Young.  This copy of the Agreement, minus Plaintiff's and Defendant's signatures, is
28 identical to the copy of the unsigned Agreement attached to the Declaration of Constance
Johnson as Exhibit 2.

**Is the Arbitration Agreement so "permeated with unconscionability" that it is unenforceable under California law and should be rejected by this Court?**

Defendant argues that, under California law, in a case involving statutory employment rights, an arbitration agreement must meet five minimum standards in order to be enforceable:

1.    It must provide for neutral arbitrators;

2.    Provide for more than minimal discovery

3.    Require a written award;

4.    Provide for all types of relief that would otherwise be available in court;

5.    Not require employees to pay unreasonable costs or fees or expenses as a condition of access to the arbitration forum.

*Armendariz*, 24 Cal. 4th at 102

The agreement may be unenforceable if it is sufficiently unconscionable.

California judges have expressly found an employment contract to be procedurally unconscionable if it is presented to an employee on a "take it or leave it" basis, and to be substantively unconscionable, if it requires the employee, but not the employer, to arbitrate claims, permits the employer to litigate in court the claims it is most likely to assert, and severely limits an employee's rights to take discovery. Plaintiff contends, but Defendant disputes, that these are similar enough to the provisions of the Arbitration Agreement in this case for this Court to find the Arbitration Agreement to be unconscionable. *Martinez v Master Protection Corporation*, 118 Cal.App. 4th 107, 113-115 (2004).

The unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. *Id.* at 113 If a contract is one of adhesion, then the court must determine if there are other factors present which render it unenforceable. *Id.* Unconscionability has both a procedural and a substantive element. *Id.* Procedural unconscionability focuses on oppression or surprise due to unequal bargaining power. *Id.* at 113. Substantive unconscionability focuses on overly harsh or one-sided results. *Id.*

United States District Court

For the Northern District of California

1    Both procedural and substantive unconscionability must be present for a court to find

2  an arbitration agreement unenforceable. *Id.* However, these elements need not be present

3  to the same degree. The greater the evidence of procedural unconscionability, the less

4  evidence is needed of substantive unconscionability, and vice versa. *Id.; McManus v CIBC*

5  *World Markets Corp.*, 109 Cal.App.4th 76, 91 (2003)

6    Defendant concedes that Plaintiff was required to sign the Arbitration Agreement as

7  a condition of employment with Trader Publishing. However, the mere fact that it was a

8  contract of adhesion does not alone render it unenforceable. *McManus*, 109 Cal.App.4th at

9  91. This is only the beginning of the analysis.

10    As distinguished from the circumstances of the *Mercuro* case, no one was

11  threatened or bullied into signing the Arbitration Agreement. *Mercuro v. Superior Court,* 96

12  Cal.App. 4th 167, 175 (2002). When Trader bought Best Image, it offered to retain all of

13  Best Image's employees. A group of Trader employees traveled from Virginia to Lake

14  County to advise the Best Image employees of Trader's policies and procedures. Trader

15  offered some benefits they had not had at Best Image, such as a 401k plan.

16    On May 17, 2005, Trader employees spent four hours with Best Image employees

17  reviewing Trader policies and procedure, including the arbitration agreement. Defendant

18  contends it encouraged employees to sign right away, but gave them the option of taking

19  the agreement home, and submitting it to an attorney or other advisor for review, as long as

20  they were prepared to sign the following day, on May 18, so the information could be

21  entered into Defendant's database by May 20, and they could be paid. (Sonner Decl., ¶7;

22  Johnson Decl. ¶10 and Ex. 1, slides 117-118).

23    Plaintiff in her declaration describes the orientation as "very hurried and hectic." She

24  also says that to her knowledge, they were not allowed to take the agreement home or

25  have it reviewed by anyone, including an attorney or other advisor. (Pltf Dec. At ¶ 5)

26    Defendant interprets Plaintiff's declaration as not stating she had any qualms about

27  signing the Agreement, nor did she ask any questions about it, or ask if she could take

28

United States District Court

For the Northern District of California

1    documents home and was refused, or asked if she could discuss them with an attorney, or

2    felt oppressed in any way in signing them.

3          In fact, Plaintiff in her declaration says that she recalls the Trader's employees'

4    describing the Arbitration Agreement as a first step in any future dispute about their

5    employment. She says if it had been described to her as waiving her right to a jury trial she

6    would have had serious reservations about signing it, "at least prior to consulting with an

7    attorney or someone to advise me." Her reservations were related to her deteriorating

8    health. (Pltf Decl. at ¶ 6 and 7)

9          Defendant argues that Plaintiff has failed to show a "high degree" of procedural

10   unconscionability related to the Arbitration Agreement, which necessitates a significant

11   showing of substantive unconscionability to render the Agreement unenforceable. Plaintiff

12   could show, for example, that it requires an employee, but not an employer, to arbitrate

13   claims, or that it imposes fees on an employee that she would not be required to bear in a

14   judicial forum, or it imposes a shorter statute of limitations than is available under state law.

15   *Martinez*, 118 Cal. App. 4th at 114-118.

16         In the case at bar, the Agreement exempts certain types of claims from arbitration:

17   workers' compensation, unemployment compensation, claims to compel arbitration, claims

18   based on a pension or benefit plan with an arbitration provision, and claims concerning

19   restrictive covenants, confidentiality agreements, or trade secrets. Plaintiff also did not

20   waive the right to file a complaint or charge with "any government agency authorized to

21   investigate or resolve employment-related matters, or any other comparable local, state, or

22   federal agency." Presumably, this means that Plaintiff could file a discrimination complaint

23   with the Fair Employment and Housing Agency ("FEHA") or the Equal Employment

24   Opportunity Commission ("EEOC").

25         Plaintiff complains that Defendant reserved the right to a court or jury trial for the

26   types of claims it could file, and relegated her to arbitration for the types of claims she could

27   file. Plaintiff retains her right to file a claim with government agencies, and to contest any

28   denial of workers' compensation, unemployment, or pension benefits. The company for the

     most part reserved its right to arbitrate disputes over the terms of her existing employment

1  or the termination of her at-will employment, any alleged violation of her agreement not to

2  work for a competitor within one year of leaving Trader and not to disclose Trader's

3  confidential information.

4  **Does the Arbitration Agreement's limit on discovery make it unconscionable and**

5  **therefore unenforceable?**

6        Plaintiff complains that the Arbitration Agreement unfairly limits discovery. She

7  contends that this gives an unfair advantage to Defendant, which has access to company

8  files  that contain information she would have to obtain by discovery, as well as relevant

9  witnesses, its employees, whom she would have to depose. *Fitz v. NCR Corp.,* 118

10  Cal.App.4th 702 at 716 (2004), citing *Mercuro v. Superior Court*, 96 Cal.App.4th 167, 183

11  (2002).

12        Plaintiff also contends that the rules of the American Arbitration Association ("AAA")

13  are unduly restrictive, and she demands to proceed under the California Arbitration Act

14  ("CAA"), which grant essentially the same procedures as the California Discovery Act. She

15  argues that the CAA balances the need for discovery against the expedited nature of

16  arbitration.

17                                  **ANALYSIS**

18  **The Mutual Agreement to Arbitrate Is Enforceable Under California Law**

19        Even if the enforceability of the Mutual Agreement to Arbitrate is determined in

20  accordance with California law, it meets the requirements of *Armendariz* and subsequent

21  cases.  Like their federal counterparts, California courts have repeatedly articulated a

22  strong public policy favoring resolution of employment and other commercial disputes by

23  means of arbitration.  (*Doers v. Golden Gate Bridge etc. District* (1979) 23 Cal.3d 180, 189;

24  *Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782.)  California courts have

25  also lauded the benefits of arbitration.  (See, e.g., *Moncharsh v. Heily & Blase* (1992) 3 Cal.

26  4th 1, 9 [California has a "strong public policy in favor of arbitration as a speedy and

27  relatively inexpensive means of dispute resolution"]; and *Madden v. Kaiser Foundation*

28

1    *Hospitals* (1976) 17 Cal.3d 699, 706-7 [California's statutory scheme "evidence[s] a strong

2    public policy in favor of arbitrations. . . [as a] favored method of resolving disputes"].)

3    Under California law, in a case involving statutory employment rights, an arbitration

4    agreement must meet five minimum standards in order to be enforceable:  (1) It must

5    provide for neutral arbitrators, (2) provide for more than minimal discovery, (3) require a

6    written award, (4) provide for all types of relief that would otherwise be available in court,

7    and (5) not require employees to pay unreasonable costs or fees or expenses as a

8    condition of access to the arbitration forum.  (*Armendariz*, supra, 24 Cal.4th at 102.)  In

9    addition, the agreement may be unenforceable if it is sufficiently unconscionable.

10           The unconscionability analysis begins with an inquiry into whether the contract is one

11   of adhesion. (*Id.* at 113.)  If a contract is one of adhesion, then the court must determine if

12   there are other factors present which render it unenforceable.  (Ibid.)  Unconscionability has

13   both a procedural and a substantive element.  (Ibid.)  Procedural unconscionability focuses

14   on oppression or surprise due to unequal bargaining power.  (Id. at 113.)  Substantive

15   unconscionability focuses on overly harsh or one-sided results. (Ibid.)  Both procedural and

16   substantive unconscionability need to be present in order for a court to find an arbitration

17   provision unenforceable.  (Ibid.)  However, these elements need not be present to the same

18   degree.  Rather, a sliding scale is applied such that the greater the evidence of substantive

19   unconscionability, the less evidence is needed of procedural unconscionability, and vice

20   versa.  (Ibid.; *McManus v. COBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 91.)

21

22           In this case, there is no dispute that Plaintiff was required to sign the Arbitration

23   Agreement as a condition of employment with Trader Publishing.  However, the fact that the

24   agreement was a contract of adhesion does not render it unenforceable.  (McManus, supra,

25   109 Cal.App.4th at 91.)  This is the beginning of the analysis, not the end.  In this case,

26   Plaintiff cannot show sufficient procedural or substantive unconscionability to render the

27   agreement unenforceable.

28

**The Arbitration Agreement Was Not "Highly" Procedurally Unconscionable**

Plaintiff repeatedly refers to the Agreement as involving a "high degree of procedural unconscionability." However, Trader Publishing did not engage in the type of oppressive conduct that would be necessary to find a "high degree" of procedural unconscionability. Nobody was threatened or bullied into signing the agreement. (See *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 175.) At the time of Trader's acquisition of Best Image's assets, Trader offered employment to all existing Best Image employees. A group of Trader employees traveled from Virginia to Lake County to welcome these employees to Trader and acquaint them with Trader's policies and procedures. Trader offered benefits that were not offered by Best Image. For example, as former employee Ann Christensen acknowledged in her declaration, Trader had a 401k plan for its employees and Best Image did not.

On May 17, 2005, Trader's representatives spent over four hours with Best Image employees reviewing policies and procedures, including Trader's arbitration program. Contrary to the Declarations of Plaintiff and Ms. Christensen, employees were not required to sign the documents that day. (Sonner Decl., ¶ 7; Johnson Decl., ¶ 10 & Exh. 1 thereto, slides 117-118.[2]) Employees were encouraged to sign that day and were told that they needed to return the signed documents by the time the Trader group left on May 18, but this was to ensure that the information could be processed so that the Best Image employees received pay checks timely and there was a smooth transition in benefits such as health insurance coverage.

Defendant contends that Best Image employees were specifically told they could take the documents with them and have them reviewed by whomever the wished. (Sonner Decl., ¶ 7; Johnson Decl., ¶ 10.) In addition to May 17, Trader representatives were available the next day to respond to any additional questions. (Sonner Decl., ¶ 8; Johnson Decl., ¶ 11.) Plaintiff complains about the orientation being "fast-paced and hectic."

---

[2] Slide 118 states "Be sure to complete and return your enrollment form(s) May 18, 2005." This was the day after the orientation sessions.

1  Defendant contends this is no different from what most employees experience their first day

2  on a new job.  Nor is it unusual for an employee to be given multiple documents to sign on

3  his or her first day.  Plaintiff's Declaration does not state that she had any qualms about

4  signing the Mutual Agreement to Arbitrate, asked any questions about it, asked if she could

5  take any of the documents home to review (and was denied), asked if she could discuss

6  them with her husband or an attorney before signing, or that she felt oppressed in any way

7  in signing the documents.

8  **The Limitation on Depositions Does Not Violate *Armendariz***

9  On the topic of discovery, the Mutual Agreement to Arbitrate provides:

10 "The Federal Rules of Evidence and the Federal Rules of Civil
Procedure shall apply, except that each party shall be limited
11 to no more than three (3) depositions unless the arbitrator,
upon application by the Company or you and upon a showing
12 of good cause, authorizes the taking of additional depositions."
(Johnson Decl., Exh. 2, ¶ 2.)
13

14 This provision complies with California law.  The court in *Armendariz* held that

15 employees must be entitled to "discovery sufficient to adequately arbitrate their statutory

16 claims, including access to essential documents and witnesses, as determined by the

17 arbitrator(s) and subject to limited judicial review pursuant to Code of Civil Procedure

18 section 1286.2." (24 Cal.4th at 106.)  *Armendariz* also acknowledged that discovery

19 limitations are an integral and permissible part of the arbitration process.  (Id. at 106 n. 11.)

20 "Adequate" discovery does not mean "unfettered" discovery.  (Mercuro v. Superior Court,

21 supra, 96 Cal.App.4th at 184.)  *Armendariz* specifically recognized that parties may agree

22 to something less than the full panoply of discovery permitted under the California

23 Arbitration Act.  (24 Cal.4th at 105-106 [referencing CCP § 1283.05].)

24 In *Mercuro*, the court found that discovery limitations similar but more extensive

25 than in the Trader Agreement provided adequate discovery.  The agreement in Mercuro

26 contained provisions stating: "…each side shall be limited to three depositions and an

27 aggregate of 30 discovery requests of any kind, including sub-parts, except as mutually

28 agreed to by the parties" and "[a] deposition of a corporate representative shall be limited

**United States District Court**
For the Northern District of California

1  to no more than four designated subjects." (96 Cal.App.4th at 182.)  The *Mercuro*

2  agreement also provided:  "[any] disputes concerning discovery shall be resolved by the

3  arbitrator, with a presumption against increasing the aggregate limit on requests,

4  additional discovery requests shall be granted only upon a showing of good cause." (Ibid.)

5  The court concluded that this provision did not prevent the plaintiff from vindicating his

6  statutory rights.  (Id. at 183.)  The limitations were mutual, they could work to the

7  employee's advantage by preventing the employer from burying him under a mountain of

8  discovery, and the discovery limits could be extended by the arbitrator for good cause.

9  (Ibid.)

10       In *Martinez v. Master Protection*, the court held that an agreement permitting one

11  deposition and a document request did not as a matter of law fail to afford adequate

12  discovery as required by *Armendariz*.  ((2004) 118 Cal.App.4th 107, 118-119.)

13       Plaintiff cites *Fitz v. NCR Corp*.  ((2004) 118 Cal.App.4th 702, 715-716) as the

14  primary authority for her argument that the discovery limitations in the Trader Agreement

15  render it unenforceable.  However, in *Fitz*, a significant factor in the court's determination

16  that the discovery limitations failed to satisfy *Armendariz* was that the agreement in

17  question failed to provide an adequate "safety valve" in the event additional discovery was

18  needed.

19       In *Fitz*,  the policy provided:

20       "To prepare for the arbitration hearing, both NCR and the employee have
         the right to take the sworn deposition statements of two individuals and, in
21       addition, any expert witnesses expected to testify at the hearing.  All
         documents to be used as exhibits and a list of all potential witnesses will be
22       exchanged at least two weeks in advance of the hearing.  No other
         'discovery' (i.e., depositions or demands for documents/information) will be
23       permitted unless the arbitrator finds a compelling need to allow it.  In
         determining whether a compelling need exists, the arbitrator will balance the
24       interests of fairness and expediency; the arbitrator will only override the goal
         of achieving a prompt and inexpensive resolution to the dispute if a fair
25       hearing is impossible without additional discovery."  (Id. at 709.)

26

27       This was an "inadequate safety valve" because the arbitrator was

28  constrained by an "impossibility" standard.  (Id. at 717.)

United States District Court

For the Northern District of California

1    The discovery provision in the Trader Agreement permits discovery in excess of that

2  which was found acceptable in *Mercuro*. The provision places no limits on any form of

3  written discovery but limits the parties to three depositions apiece. The Trader provision

4  also includes a safety valve permitting the arbitrator to authorize additional depositions on a

5  showing of "good cause." The court in *Mercuro* specifically found a provision permitting

6  additional discovery on a showing of "good cause" to be permissible. (96 Cal.App.4th at

7  183.)

8    Plaintiff at the hearing drew the Court's attention to a recent decision, but the Court

9  finds the facts in that case to be significantly distinguishable from the case at bar. In the

10  *Ontiveros* case, the employee was limited to taking the deposition of one fact witness and

11  one expert, absent a highly burdensome showing of "substantial need." Counsel for the

12  employee-plaintiff in that case estimated needing 15-20 depositions, due to the

13  circumstances. *Ontiveros v. DHL Exp. (USA), Inc.* 2008 WL 2573717  (Cal.App. 1 Dist.). In

14  the case at bar, under the Arbitration Agreement, Plaintiff may take three depositions, as

15  well as written discovery, and may obtain more, on a showing of good cause. At the

16  hearing, Plaintiff's counsel asserted a need to depose an employment practices expert and

17  an economics expert. The Court asked if, in counsel's experience, arbitrators routinely

18  granted parties' requests for additional discovery. Plaintiff's counsel did not have practical

19  experience with this issue, but defense counsel stated that in her extensive experience,

20  arbitrators routinely accommodated parties' need for additional discovery. The Court finds it

21  likely that Plaintiff in this case will obtain all the discovery she wants, and that the finding of

22  unconscionability in *Ontiveros* is inapplicable here.

23  **Plaintiff's "Misrepresentation" Argument is Unavailing**

24    Plaintiff contends that the Mutual Agreement to Arbitrate was misrepresented as

25  being "just a first step" in the event of an employment dispute. This contention is not

26  supported by the documents or other evidence. The Agreement makes it clear in multiple

27  places that arbitration is binding and replaces a jury trial.

28

United States District Court

For the Northern District of California

1    For example in Paragraph 1 the Agreement states:

2    "Except as otherwise provided in this Agreement, you and the Company agree to

3    settle by final and binding arbitration any and all claims and controversies … arising out of

4    your employment … ."  (Johnson Decl., Exh. 2, ¶ 1.)

5    The "Employee's Acceptance" provides:

6    "I understand and acknowledge that by signing this Arbitration Agreement, the

7    Company and I are giving up the right to jury trial and to a trial in a court of law with respect

8    to any arbitrable claim either of us may have against the other."  (Johnson Decl., Exh. 2, p.

9    2.)

10    The Agreement also contains an integration provision.  (Johnson Decl., Exh. 2, ¶ 8.)

11    Thus, the parol evidence rule prohibits the consideration of extrinsic evidence to vary or

12    contradict the written instrument.  (*Gerdlund v. Electronic Dispensers Int'l* (1987) 190

13    Cal.App.3d 263, 270.)

14    The Power Point slide used during the discussion of Trader's arbitration agreement

15    stated:  "Agreement says you agree to have your concerns heard by an arbitrator rather

16    than judge/jury."  (Johnson Dec., Exh. 1, Slide 51.)

17    The "Questions and Answers" provided to all Best Image employees responded to

18    the question "What is the difference between Arbitration and a court trial?" by stating, in

19    part:  "With Arbitration, the decision is final.  There is no right to a jury trial after the

20    Arbitration.  …"  (Johnson Decl., Exh. 4.)  This was also covered in the Employee

21    Guidebook.  (Johnson Decl., Exh. 5.)

22    It should also be noted that the Declaration of Ann Christensen does not corroborate

23    Plaintiff's claim that the Arbitration Agreement was "described by TRADER's

24    representatives as just a first step, should we ever have any disputes about our

25    employment" or that none of the representatives described the Agreement as "'binding' or

26    that we were waiving our right to a jury trial."  (Young Decl., Exh. A, ¶ 6 (Siglain Decl.) and

27    Exh. B (Christensen Decl.).)

28

United States District Court
For the Northern District of California

1    To the extent Plaintiff is arguing that the Arbitration Agreement is not binding on her

2    from a contractual standpoint, this claim is without merit.  The Agreement was an integrated

3    document on the topic of arbitration.  To the extent Plaintiff is suggesting she did not know

4    what she was signing, this does not affect the validity of the Agreement.  Plaintiff had the

5    obligation to have any concerns she had addressed before she signed.  (*Gold v. Deutsche*

6    *Aktiengeselschaft*, 365 F.3d 144, 149 (2nd Cir. 2004.)  To the extent Plaintiff is suggesting

7    that she was fraudulently induced to sign the Agreement, even her witness does not

8    support her on this claim.  Nor can she establish that she reasonably relied any such

9    misrepresentations given the clear language in the documents Trader provided to her

10    advising that she was giving up her right to jury trial.

11    **Plaintiff Has Failed to Establish that the AAA Or Assigned Arbitrator is Not Neutral**

12    Plaintiff argues that the Arbitration Agreement does not provide for a neutral

13    arbitrator because it specifies the American Arbitration Association as the arbitration

14    provider and "AAA has taken a highly public position against trial attorneys and, in

15    particular, members of the San Francisco Trial Lawyers Association."  In making this

16    argument, Plaintiff's counsel cites opinions expressed by the President of the American

17    Arbitration Association on pending legislation affecting arbitration which the San Francisco

18    Trial Lawyers Association took exception to.

19    The opinions expressed by this one individual in no way reflect whether the

20    arbitrators admitted to the AAA's roster are neutral.  AAA is a nonprofit, public service

21    organization dedicated to the resolution of disputes through alternative dispute resolution

22    proceedings.  (Hartley Decl., Exh. 2.)  AAA has well established rules concerning

23    qualifications for arbitrators which require neutrality.  (Hartley Decl., Exh. 1.)

24    The organization also has rules governing the selection process, disclosure

25    requirements for arbitrators, and disqualification to ensure that only neutral arbitrators hear

26    cases.  (See Hartley Decl., Exh. 2, Rules 12, 15-17.)  There is nothing inherently biased

27    about the AAA.  Nor has Plaintiff cited any case law supporting her argument.

28

United States District Court

For the Northern District of California

1    There is also nothing about this specific case which indicates that the use of the AAA

2    would result in a biased decision.  Defendant has never arbitrated a case with AAA in

3    California and cannot be viewed as a "repeat player" by any stretch of the imagination.

4    (Sonner Decl., ¶ 10.)  Furthermore, Plaintiff's counsel has informed the AAA that he does

5    not have any dispute with the parties' assigned arbitrator, Rebecca Eisen.  (Hartley Decl.,

6    Exh. 3.)(Ms. Eisen may have a conflict, due to the East Coast office of her firm representing

7    a party potentially adverse to Defendant; Def. P&A in Opp. At 4, fn. 1.)

8    **To the Extent the Exclusion of  Claims For Restrictive Covenants is Unconscionable**

9    **the  Provision Can be Severed**

10    Plaintiff contends that the Arbitration Agreement lacks mutuality because under the

11    Agreement With Restrictive Covenants, "defendant remains fully able to access courts to

12    redress claims that its employees solicited its clients, disclosed trade secrets, or otherwise

13    improperly used the company's proprietary materials."  In support of this assertion, Plaintiff

14    cites paragraph VII of the Agreement with Restrictive Covenants which provides that

15    Defendant is entitled to injunctive relief in the event of Plaintiff breaching certain obligations

16    under the Agreement with Restrictive Covenants.  (Young Decl., Exh. A (Siglain Decl.), &

17    Exh. A thereto.)

18    Although not discussed by Plaintiff, the Mutual Agreement to Arbitrate defines

19    "Claims Not Covered" as including "claims concerning restrictive covenants, confidentiality

20    agreements or trade secrets.  (Johnson Decl., Exh. 2, ¶ 3(e).)  The Agreement With

21    Restrictive Covenants is separate from the Mutual Agreement to Arbitrate and is not at

22    issue in this case.  The fact that the Agreement With Restrictive Covenants states that the

23    loyalty bonus is being paid as consideration for Plaintiff signing both that agreement and the

24    Arbitration Agreement does not, as Plaintiff contends, result in the Agreement with

25    Restrictive Covenants "expressly incorporating" the Arbitration Agreement.

26    In *Armendariz*, the court found that an arbitration agreement which only applied to

27    employee claims lacked mutuality and was unconscionably one-sided.  (24 Cal.4th at 120.)

28    In *Mercuro*, the court extended this holding to a provision excluding claims for injunctive or

1  equitable relief for intellectual property and similar claims, although equally applicable to

2  both parties.  (96 Cal.App.4th at 175-177.)  The basis for this holding was the court's

3  supposition that the provision exempted those claims an employer was most likely to bring

4  against its employees.  (Id. at 176.)

5     The Arbitration Agreement in this action contains a provision similar to that in

6  *Mercuro*.  To the extent this provision is impermissible, it can easily be severed, and the

7  Arbitration Agreement enforced without it. Unconscionable provisions may be severed from

8  an arbitration agreement allowing the remainder of the agreement to be enforced so long as

9  the entire agreement is not "permeated" with unconscionability.  (*Armendariz*, supra, at 121-

10  122.)  The Court has the discretion to strike any single clause or group of clauses which are

11  unconscionable.  (Id. at 122.)

12     In this case, the Agreement in question is in no way "permeated" with

13  unconscionability.  The only provision which is even arguably substantively unconscionable

14  is that excluding claims concerning restrictive covenants.  This provision is a far cry from

15  the one in *Armendariz* which required only employees' claims to be arbitrated.  In all other

16  respects, this Agreement tracks the requirements of *Armendariz* and its progeny in terms of

17  cost allocation, no limits on employees' remedies, permitting adequate discovery, providing

18  for a neutral arbitrator, and in applying to both parties equally.

19     Furthermore, unlike *Armendariz* and other cases, the one potentially unconscionable

20  provision is contained in a separate and distinct subsection (Mutual Agreement, ¶ 3(e)) and

21  can easily be severed without requiring any rewriting of the Agreement.  (Id. at 124-125;

22  See also *Mercuro* at 184-185.)

23     At the hearing on this matter, Defendant agreed to sever this provision and for

24  purposes of the arbitration, it is hereby severed from the Agreement.

25     For the first time at the hearing, Plaintiff raised a concern about the availability of an

26  award of attorney fees, should Plaintiff prevail at the arbitration. Defendant conceded that

27  this question would be governed by applicable California law, including the Fair

28

United States District Court
For the Northern District of California

1   Employment and Housing Act, and that fees could be awarded to the Plaintiff by the

2   arbitrator, should she prevail.

3                                    **Conclusion**

4        For all the above reasons, Defendant's motion to stay this case pending arbitration is

5   granted, and Plaintiff's motion to enjoin the arbitration and proceed in this case is denied.

6   The provision at Mutual Agreement, ¶ 3(e), for purposes of the arbitration, is hereby

7   severed from the Agreement.

8        IT IS SO ORDERED.

9   DATED: July 25, 2008

10

11   _____

12                        James Larson
                     Chief Magistrate Judge

13

14

15   G:\JLALL\CHAMBERS\CASES\CIVIL\08-2108\Order-grant-4-deny-14.wpd

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California